UNITED STATES of America, Appellee,

v.

William F. POWERS, Appellant.

No. 77–1796.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 9, 1978.
Decided Feb. 28, 1978.

James A. Daugherty, St. Louis, Mo., for appellant.

James J. Barta, Asst. U. S. Atty., St. Louis, Mo., for appellee; Robert D. Kingsland, U. S. Atty., St. Louis, Mo., on the brief.

Before GIBSON, Chief Judge, and ROSS and WEBSTER,* Circuit Judges.

ROSS, Circuit Judge.

The appellant William F. Powers challenges his four count conviction under 18 U.S.C. § 922(h)(1) and 924(a). Powers, a previously convicted felon under Missouri law, was charged with the unlawful receipt of firearms which had been transported in interstate commerce. Powers raises a multitude of issues, seventeen in all, one of which we find merits an alteration of the judgment of conviction.[1] Accordingly, we affirm as to counts one and two, and order that counts three and four be dismissed.

Under count one Powers was charged with the unlawful receipt of one Revelation 30–30 caliber rifle. According to the trial testimony, Powers received this rifle from Mr. Clyde Brown, who then resided in Leasburg, Missouri. On November 8, 1976, after Powers had finished helping Brown on a remodeling project on Brown's trailer, Powers asked Brown if he could borrow Brown's "deer rifle" for the deer season which opened the next day. Brown agreed to the loan, and also testified that at that time he had no knowledge that Powers, whom he had known one or two months, was a convicted felon.

Powers was subsequently stopped on November 12, 1976, by assistant police chief Taylor of the Sullivan, Missouri police department at approximately 9:30 p. m., after Taylor had received a radio call directing him to stop Powers and advising him that Powers might have a firearm in the vehicle. After the stop the Crawford County sheriff's department then took Powers into custody; officer Giles of that department testified that Powers told Giles, after Giles advised Powers of his rights, that Powers had acquired the gun from Clyde Brown. Giles took the firearm from the local police officer, and later contacted agents of the Alcohol, Tobacco, and Firearms Department concerning Powers' arrest. The government adduced evidence that the firearm, taken from Powers in Missouri, had been manufactured in Massachusetts.

Counts two, three, and four relate to the unlawful receipt of three other firearms by Powers: a Marlin .22 caliber rifle, a Remington 25.06 caliber rifle, and a Winchester 30–30 caliber rifle. According to the testimony of government witness Dennis Busby, Powers approached Busby, on or about December 18, 1976, and requested Busby's help in transporting these three firearms in Busby's vehicle from Leasburg to St. Louis, where Powers had plans to sell them. Busby testified that Powers revealed that he had acquired the guns by theft from the Larry Miller residence in Leasburg.

Thereafter Busby notified the Cuba, Missouri chief of police, as well as the highway patrol, of the fact that Powers had approached him; the police chief suggested that Busby go through with the plan as Powers had suggested. Powers and Busby met at a tavern and then drove to a thicket where the rifles were hidden; Powers placed the guns in Busby's vehicle, and the two left. Later as Powers and Busby drove onto the Interstate, the officers whom Busby had contacted stopped the vehicle as prearranged; Busby stepped out of the vehicle and the officers asked for the keys to the trunk and for permission to open the

---

* Judge Webster participated in the hearing of this case but did not participate in the preparation of the opinion.

1. Powers received an aggregate prison term of eight years; he received four years on count I and four years on count II to run consecutively. The four year terms also imposed on counts III and IV ran concurrently with count II and consecutively to count I.

trunk, which Busby gave. Powers, Busby, and the weapons were then taken to the state patrol office, though Busby was not charged. There is testimony that during the trip Powers was intoxicated or appeared to be intoxicated.

Mr. Larry Miller also testified concerning the theft of his rifles on December 14, 1976; at trial he identified the three rifles taken from the Busby vehicle as being the three rifles stolen from his residence. Evidence was adduced that the three rifles taken from the Busby vehicle in Missouri had been manufactured outside of the state of Missouri.

## I. The Allowable Unit of Prosecution

Of the many errors Powers has alleged, the most significant is the allegation that he was erroneously indicted and convicted on three counts for the simultaneous receipt of three firearms. Powers argues that the statutory phrase "to receive any firearm"[2] is ambiguous and does not instruct whether the simultaneous receipt of the guns constitutes one offense or three separate offenses under the statute. The appellant urges the court to adopt the rationale of *United States v. Kinsley,* 518 F.2d 665, 666 (8th Cir. 1975), and merge the latter three counts:

The allowable unit of prosecution for a federal offense is set by Congress. When Congress fails to set the unit of prosecution with clarity, doubt as to congressional intent is resolved in favor of lenity for the accused. This settled rule of federal criminal law has received its most celebrated expression in *Bell v. United States,* 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955).

\* \* \* \* \* \*

The *Bell* rule of construction is founded on the dual considerations that criminal legislation must provide fair warning and that the legislature and not the courts should define criminal activity. *United States v. Bass,* 404 U.S. 336, 348, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971).

*Id.* at 666–67.

In *Kinsley* the appellants had been convicted on a four count indictment charging them, as previously convicted felons, with the unlawful *possession* of firearms in violation of 18 U.S.C.App. § 1202(a)(1).[3] Each count involved a separate weapon. Under § 1202(a)(1) punishment is prescribed for a felon "who receives, possesses, or transports in commerce or affecting commerce \* \* *any firearm* \* \* \*" (emphasis added).

As in *Kinsley,* the statute in the present case, § 922(h)(1), utilizes the word "any" to define the offense, a word which frequently gives rise to *Bell* -type ambiguity. *United States v. Kinsley, supra,* 518 F.2d at 667.

Attempting to define "any firearm" in accordance with the legislative intent, the *Kinsley* court examined the § 1202(a)(1) statutory language, the Act's legislative history, and the statutory scheme, but these sources failed to dispel the ambiguity. *Kinsley* concluded: "The Supreme Court has recently reiterated that problems of this sort [uncertainty as to the proper unit of prosecution] must be resolved in favor of the criminal defendant unless Congress has 'plainly and unmistakably' defined the federal crime." *United States v. Kinsley, supra,* 518 F.2d at 670. Accordingly, Kinsley's four count conviction, which carried consecutive sentences, was remanded for resentencing.

---

**2.** 18 U.S.C. § 922(h)(1) provides in relevant part:

(h) It shall be unlawful for any person—
(1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

**3.** 18 U.S.C.App. § 1202(a)(1) provides in relevant part:

(a) Any person who—
(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, \* \* \*
and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

The government argues that for the following reasons *Kinsley* is inapplicable to this case: *receipt,* not possession, is charged here, and different firearms statutes are involved. We find these distinctions unpersuasive.

The government first argues that its burden is greater under the receipt statute than under the possession statute as it must prove that "each firearm traveled in interstate commerce at a time and between states different from the other firearms." This, however, proves only that the government must show the requisite *interstate nexus,* which in *this* case required the proof that the three guns were manufactured in three different states. An interstate nexus is, however, also an element of a § 1202(a)(1) possession offense. Since *Barrett v. United States,* 423 U.S. 212, 96 S.Ct. 498, 46 L.Ed.2d 450 (1976), it has been clear that § 922(h) broadly prohibits a felon's *receipt* of any firearm which has been shipped in interstate commerce, without the limitation that the unlawful receipt itself be a part of the interstate movement. *Id.* at 216, 96 S.Ct. 498. Since the recent opinion of the Court in *Scarborough v. United States,* 431 U.S. 563, 575, 97 S.Ct. 1963, 1969, 52 L.Ed.2d 582 (1977), a § 1202(a) *possession* case, it is clear that the interstate nexus requirement under that statute is also minimal:

[W]e see no indication that Congress intended to require any more than the minimal nexus that the firearm [has] been, at some time, in interstate commerce.

It is the unlawful *receipt* of the firearms which Congress has defined as a criminal act, and where the acquisition of several firearms is accomplished simultaneously in a single theft,[4] we see no greater burden than where the government must prove the simultaneous *possession* of multiple weapons.[5]

By inference this court has expressed a willingness, in a proper case, to extend the *Kinsley* rationale to a *receipt* case under § 1202(a)(1). In *United States v. Steeves,* 525 F.2d 33 (8th Cir. 1975), this court refused to apply *Kinsley* because the government had in fact *proved separate receipt* of the firearms:

We do not read *Kinsley,* however, as holding that the receipt of separate firearms on separate occasions constitutes only one offense simply because the weapons are kept in a single possession and are ultimately seized at the same time and on the same premises. And we are satisfied that *if a convicted felon receives a firearm on one occasion and later receives another firearm on another occasion, he is guilty of two offenses,* assuming that prior to the respective receipts the two guns had moved in interstate commerce.

\*   \*   \*   \*   \*   \*

In view of what has been said, it follows that if the defendant unlawfully received the respective weapons at different times or on different occasions and if prior to his receiving them the weapons had moved in interstate commerce, the defendant was guilty of two offenses rather than one, and the district court did not err in refusing to merge the two counts.

*Id.* at 39 (emphasis added). *See also United States v. Rosenbarger,* 536 F.2d 715, 721

4. In *United States v. Kelly,* 519 F.2d 251 (8th Cir. 1975), a § 1202(a)(1) receipt case, this court held that "a felon who acquires a weapon by theft, *receives* that weapon within the meaning of § 1202(a)." *Id.* at 253 (emphasis added). "Receiving" firearms was defined in terms of "acquiring" firearms.

5. It is true that in § 1202(a)(1) receipt cases we have held that the government must prove facts additional to those in a *possession* case. "[The receiving charge] is not synonymous with a possession charge since receiving requires more than mere proof of possession. Time of the receipt and venue must be proven as well." *United States v. Winer,* 519 F.2d 256, 257 (8th Cir. 1975). (*See also United States v. Butler,* 541 F.2d 730, 736–37 (8th Cir. 1976) where this court equates the "receipt" provisions of §§ 1202(a)(1) and 922(h) and speaks of the government's burden "[u]nder a receiving charge." *Id.* at 737 n.14.) Once again, however, the fact of *simultaneous* receipt would seem to obviate a greater factual burden for the government.

(6th Cir. 1976) ("We are of the opinion that only one offense is charged under the terms of § 1202(a)(1) regardless of the number of firearms involved, absent a showing that the firearms were stored or *acquired* at different times or places." (Emphasis added)); *United States v. Killebrew,* 560 F.2d 729, 734 (6th Cir. 1977); *United States v. Calhoun,* 510 F.2d 861, 869 (7th Cir. 1975).

Though *Kinsley* and *Steeves* both dealt with § 1202 possession and receipt, other courts have reached similar results when confronted by ambiguities in the Gun Control Act, 18 U.S.C. § 922 *et seq.* In *United States v. Carty,* 447 F.2d 964, 965 (5th Cir. 1971) the court merged into one count, three counts of the defendant's conviction for simultaneously transporting three stolen firearms under § 922(i); in *McFarland v. Pickett,* 469 F.2d 1277, 1279 (7th Cir. 1972) the court ordered a defendant resentenced who had been given consecutive sentences on two counts under § 922(j) (charges of concealing and storing stolen firearms) where the only difference in the proof was that two separate weapons were involved.

■ Moreover, the government in this case has offered us no citations to the legislative history or arguments based on the structure of the Gun Control Act which would aid us in resolving the ambiguity in its favor. Accordingly we dismiss Powers' counts three and four convictions on our interpretation of *United States v. Kinsley, supra,* 518 F.2d 665.

*II. Other Alleged Errors*

■ Powers makes numerous other allegations of error, none of which merit a reversal of his conviction. It is alleged that the court erred in allowing the government to amend count one of the indictment which had erroneously described the firearm as a "30–30 caliber *revolver*" instead of a "30–30 caliber *rifle*." The amendment in this case is not one of *substance* and does not require a reversal:

[T]he change of a weapon's serial number in this indictment does not require

dismissal. Correction of a typographical error which goes to the form rather than the substance of the indictment is permissible. *Stewart v. United States,* 395 F.2d 484 (8th Cir. 1968) (change in date of offense). *See United States v. Fruchtman,* 421 F.2d 1019 (6th Cir. 1970) (change in citation of statute); *United States v. Denny,* 165 F.2d 668 (7th Cir. 1947) (change in spelling of defendant's name); *but see Carney v. United States,* 163 F.2d 784, 788–90 (9th Cir. 1947).

*United States v. Neff,* 525 F.2d 361, 363 (8th Cir. 1975).

At oral argument counsel for the defense stated that the change in the indictment was raised a week prior to trial, and in response to a question admitted that the amendment had not altered his preparation for trial.

■ Similarly, the trial court did not err in allowing the government to reopen its case to present evidence on the test-firing of the firearms seized from Powers. The government presented its case-in-chief and the defendant chose not to present evidence, moving instead for a judgment of acquittal. Immediately following the acquittal motion, the government sought to reopen the case and present the additional evidence from an agent who had test-fired the weapons.

■ Whether or not evidence of test-firing was necessary to meet the statutory definition of a "firearm" in this case, there was no error in allowing the government to reopen to present this evidence. This court has previously permitted the government to reopen in a very similar case arising under 26 U.S.C. § 5861(d) where it was necessary to prove that the weapons were "serviceable" pursuant to an act requiring firearms registration. *United States v. Webb,* 533 F.2d 391, 395 (8th Cir. 1976). We have examined the facts enunciated in *United States v. Webb, supra,* which a trial court should consider in granting the government leave to reopen,[6] and conclude that no abuse

---

**6.** Relevant factors for decision are whether the evidence caused surprise to the defend-

ant, whether he was given adequate opportunity to meet the proof, and whether the evi-

of discretion is shown by the trial judge's decision in this case.

Nor did the trial court err in reserving its ruling on the acquittal motion until after the government presented this additional, brief testimony. *United States v. Dossey,* 558 F.2d 1336, 1339 (8th Cir. 1977).

Powers next argues that nineteen days was an insufficient amount of time to allow him to prepare for trial. First of all, Powers makes no mention or allegation that he requested a continuance from the trial court. Assuming he did, we perceive no error. Powers' counsel makes only vague allegations that the area of the crime was 100 miles from where Powers was incarcerated which "made it extremely difficult to investigate and interview potential witnesses and confer about the many and varied facets of this case."

Powers makes not one specific allegation of "evidence which was available and which he did not discover before trial." *United States v. Crow Dog,* 537 F.2d 308, 309 (8th Cir. 1976); *United States v. Turner,* 551 F.2d 780, 782 (8th Cir. 1977). Powers' brief to this court in fact states that "[a]ppellant and his counsel did confer on numerous occasions and appellant's counsel did interview witnesses and others in Cuba and Steelville." Clearly no abuse of discretion by the trial court has been shown. *United States v. Webb, supra,* 533 F.2d at 395. (In *Webb, supra,* the court found no error in the denial of a continuance where the defendant had six days to prepare for trial. *Id.*)

Powers' claim that the government failed to prove that the weapons were firearms within the meaning of the statute is frivolous. Ample evidence, including evidence of test-firing the weapons was adduced.

Next it is claimed that Dennis Busby's identity as a government informer was unfairly withheld from Powers prior to tri-

al. At a pretrial hearing the magistrate had sustained the government's objection to Powers' request for the identity of the government informer. However we need not reach the questions discussed in *Roviaro v. United States,* 353 U.S. 53, 64–65, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) or *United States v. Gocke,* 507 F.2d 820, 825–26 (8th Cir. 1974) because Powers and his counsel did in *fact* know Busby's identity prior to trial. Powers certainly had reason to suspect Busby might have informed, and at oral argument Powers' counsel told the court that he twice traveled to Steelville to interview Busby but could not locate him. According to the government, Busby was not under protective custody and as far as it knew would have been available prior to trial to be interviewed. Busby testified at the trial and was cross-examined by Powers' counsel. Under these circumstances we see no prejudice to the defendant in the government's refusal to tell Powers that Busby, whose *identity* was in fact known to the defendant, was the informer in the case.

Appellant's numerous objections to the jury instructions are also without merit. Giving both instructions numbers six and seven did *not* "unnecessarily emphasize the elements of the crimes alleged." In number six the judge merely read an abbreviated portion of the statute under which the charge was made; in number seven he broke down the offense as charged into the three elements which the government would be required to prove to convict on that offense.

There is nothing "confusing" about telling the jury at the beginning of the charge that throughout the trial the government carries the burden of proving guilt beyond a reasonable doubt, and later telling them that the government need *not* prove that the defendant knew the firearms had traveled in interstate commerce.

*United States v. Webb,* 533 F.2d 391, 395 (8th Cir. 1976).

dence was more detrimental to him because of the order in which it was introduced.

■ The copies of records proving the out-of-state manufacture of the firearms were properly admitted into evidence. *See* Fed.R.Evid. 803(6). Qualified witnesses from four firearms manufacturers testified that the records were regularly kept business records and properly authenticated the records. Contrary to Powers' assertion, photostatic copies are expressly admissible in evidence under 28 U.S.C. § 1732.

■ The government did not "unduly emphasize the appellant's prior conviction" during the course of the trial. It was necessary for the government to prove Powers' status as a felon as an element of the offense. A certified copy of Powers' prior conviction was introduced through the testimony of a government agent; another agent, a fingerprint specialist, testified that the fingerprints taken from the defendant were the same prints as appeared on the state conviction certification. All of the government attorney's references in summation to the prior conviction were repetitive of this same evidence, and there was no error.

Powers contends that the magistrate and trial court erroneously concluded that Powers had no standing to contest the validity of the search of Dennis Busby's vehicle and the subsequent seizure of the guns. We do not comment on the standing question because in any event Busby gave his *express* consent to the search. In *United States v. Kurck,* 552 F.2d 1320 (8th Cir. 1977), the arresting agents had obtained only implied consent from the informant-car owner prior to the search and we held: "[w]e believe the evidence establishes an implied consent by the owner to search the vehicle in question. For that reason, the search did not violate the constitutional right of the appellant as a passenger in the car." *Id.* at 1321.

■ The court did not err in refusing to suppress Powers' statements to agent Holdiman concerning the acquisition of the firearms. At trial, prior to repeating Powers' in-custody statements, the agent testified that on both dates he advised Powers of his rights, that Powers understood and waived them, and that he then answered questions. On the first occasion Powers signed a waiver form prior to questioning. Powers did not refute this testimony at trial or in his brief, but contends vaguely that the questioning was "inherently coercive as applied to a person of his age, education, background and mental condition * * *." Appellant however cites not one specific example and all other available evidence proves that whatever statements were made were freely and voluntarily spoken. *See United States v. Hartmon,* 566 F.2d 49 (8th Cir. 1977). The trial court did not err in initially adopting the magistrate's findings on this question, or in reaching the same conclusion when the motion to suppress was renewed at trial.

Powers makes two allegations relating to the introduction of "other crimes" evidence.

■ First he alleges that the court improperly admitted Busby's testimony that Powers confessed stealing the three weapons from the Miller residence. Proof of the theft was, however, necessary to prove receipt, an essential element of the crime charged. As such it was highly relevant to intent and knowledge, purposes for which we have approved the use of other crimes evidence, Fed.R.Evid. 404(b), and it was not introduced for the purpose of proving that Powers was a man of bad character and more likely to have committed the offenses charged.

■ We do agree, however, that Sheriff Giles' testimony, given over the objection of defense counsel, that Powers was in possession of disassembled parts of a gun stored in a coffee can at his home, was of little if any relevance to the charges. However, the error of its admission into evidence was harmless. Giles also testified that Powers told him the gun had been a family keepsake for quite some time and the judge immediately instructed the jury that the "testimony is not being admitted to show

the character of the witness in this case or to prove that the defendant is guilty of the crime charged in this case. * * * "

Finally, we reject without discussion all of Powers' other assertions, made without any cited authority, that the indictment should have been quashed;[7] that the motion for acquittal should have been granted; that the verdict is against the substantial weight of the evidence; that the combined effect of the alleged errors deprived the appellant of a fair trial.

In concluding this opinion we cannot help but note that the brief filed by appellant's counsel is a classic example of the "shotgun" approach used by some lawyers. Many of the sixteen points raised were frivolous, cited no proper authority, and displayed a lack of research which is inexcusable. This procedure causes a loss of the court's time and does not enhance the chances of the attorney's client in his quest for reversal of a conviction.

We affirm the convictions on counts one and two and order the trial court to dismiss counts three and four.

---

7. Several unsupported reasons are given for quashing the indictment, none of which merit individual consideration. Those reasons are as follows: the indictment does not state facts sufficient to constitute an offense; the indictment does not advise the defendant of the nature and cause of the accusations and violates the sixth amendment and Rule 7(c) of the Federal Rules of Criminal Procedure; the accusations in the indictment plead conclusions and do not plead facts and are vague; sections 922(h)(1) and 924(a) are unconstitutional as violative of the fifth, ninth and tenth amend-ments; the grand jury was improperly selected and persons residing in rural communities were intentionally excluded; unauthorized persons were given the duty of selecting jurors; there was insufficient evidence before the grand jury to permit it to return an indictment; the indictment was based on illegally obtained evidence in violation of the first, third, fourth, fifth, sixth and fourteenth amendments; the indictment's allegation that the defendant was "in receipt of firearms which had been shipped in interstate commerce" is vague and indefinite and prevents defendant from preparing a defense.