# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3472

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Earnest Jesse Richardson, also | * | District of Minnesota. |
| known as Ernest Jesse Richardson, | * | |
| also known as Torrence C. Epps, | * | [PUBLISHED] |
| | * | |
| Appellant. | * | |
| | * | |

_____

Submitted:  June 23, 2005
Filed:  November 4, 2005

_____

Before MELLOY, HEANEY, and GRUENDER, Circuit Judges.

_____

PER CURIAM.

Earnest Jesse Richardson was convicted following a jury trial on two counts: being a felon in possession of a firearm and being a drug user or addict in possession of a firearm.  He was sentenced to 103 months' imprisonment on each count, to be served concurrently.  On appeal, Richardson (1) challenges the district court's[1]

_____

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

decision not to suppress evidence and statements; (2) claims his counsel was ineffective; and (3) claims that his sentence improperly imposed penalties on multiplicitous counts, pursuant to an unconstitutional guidelines scheme.[2] We affirm.

## BACKGROUND

On September 18, 2002, at approximately 10:00 a.m., two Minneapolis Police officers, Corporal Francisco Javier Porras and Officer Laura Hanks, were patrolling a neighborhood in North Minneapolis. As the officers drove down Hillside Avenue in their marked squad car, they saw a group of three men, including Richardson, gathered on the corner a block away. When the men saw the squad car, they split up, each walking in a different direction. The officers followed Richardson, who repeatedly looked back at the squad car as he walked up Illion Avenue. He entered the enclosed porch of a residence and knocked on the door. The officers stopped their car across the street from the house, and Officer Hanks partially exited the passenger side of the squad car and called to Richardson over the vehicle. At the time, she was separated from Richardson by the car, street, and sidewalk. Corporal Porras remained in the vehicle.

Officer Hanks asked Richardson if he knew who lived in the house, and Richardson responded that he had not done anything wrong. He then left the porch. Corporal Porras, who was still sitting in the squad car, shouted to Richardson and asked whether he knew the people that lived in the house. Richardson did not respond. Officer Hanks asked Richardson if they could talk to him. Richardson repeated that he had not done anything wrong and then sprinted between the houses into the alley.

---

[2]Richardson does not challenge the sufficiency of the evidence on either count.

Officer Hanks chased Richardson on foot while Corporal Porras followed in the squad car. Porras saw Richardson jump over a chain link fence. While attempting to intercept Richardson, Porras crashed the squad car, which Richardson bolted around. A probation officer in the area, Joseph Longueville, saw Richardson running toward him and moved to intercept him. At this point, Richardson surrendered to the officers, and was placed in the back of the crashed squad car.

Officer Hanks and another officer searched for contraband on the Illion Avenue porch Richardson had entered earlier, as well as in the yard of the residence, but did not find anything. Corporal Porras then searched the area near the yard of 1561 Hillside Avenue, a nearby residence, and found a wallet containing crack cocaine and Richardson's identification, as well as a firearm near the rear steps of the house.

With Richardson in the back of the squad car, the officers drove back to where the items had been recovered to verify the addresses involved in Richardson's attempt to flee. While parked in front of 1561 Hillside Avenue, Richardson allegedly said without prompting that he was responsible for the drugs but not the gun. He had not received a Miranda[3] warning at the time. The next day, Richardson met with Sergeant Granroos, who advised Richardson of his Miranda rights. Richardson waived his rights and repeated the statements he had made the previous day, indicating that he was responsible for the drugs but not the gun.

Charges were filed against Richardson in state court. Richardson claimed that he had been illegally seized prior to his flight from the police, and moved to have the subsequently discovered evidence and statements suppressed. Ronnaye Riggins, the resident of the house whose porch Richardson entered, testified that he was a friend of Richardson's and that Richardson was a frequent guest at the house. On February 4, 2003, the state district court concluded that Richardson was illegally

---

[3]Miranda v. Arizona, 384 U.S. 436 (1968).

seized during his pre-flight encounter with the police, and granted the defendant's motion to suppress.

On March 11, 2003, a federal grand jury returned a two-count indictment charging the defendant with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and being a drug user or addict in possession of a firearm, in violation of 18 U.S.C. § 922(g)(3). Richardson again moved to suppress the evidence and statements because he claimed his pre-flight encounter with the police was an illegal seizure. He also argued that the federal court was bound by the state court's determination that he was illegally seized. The magistrate judge rejected these arguments and recommended denying the motions to suppress; the Report and Recommendation was adopted in its entirety by the district court. Two weeks later, Richardson failed to appear for a mandatory drug test, a condition of his pretrial release. He also failed to appear for his trial on July 21, 2003, and a warrant was issued for his arrest. On December 10, 2003, Richardson was apprehended after making a wrong turn down a one-way street in front of a police officer. When he was searched, officers found crack cocaine and a crack pipe.

At trial, Richardson stipulated that he was a felon, but did not stipulate as to his status as a drug user or addict. The prosecution offered evidence that the fingerprint of Richardson's left ring finger was found on the gun recovered by officers following Richardson's flight. The jury convicted Richardson on both counts of the indictment.

At sentencing, Richardson argued, based on the recently issued Blakely[4] opinion, that the guidelines were unconstitutional. The district court found that Richardson had a criminal history category of V and that his total offense level was 24, resulting in a guidelines range of 92 to 115 months. The judge stated that his

---

[4]United States v. Blakely, 542 U.S. 296 (2004).

-4-

sentence would be unaltered if the guidelines were not mandatory. He then sentenced Richardson to 103 months on each count, to be served concurrently, with three years supervised release, and a mandatory special assessment of $100 for each count.

Richardson appeals to this Court claiming that: (1) his initial encounter with the police was an illegal seizure and that all evidence subsequently obtained should have been suppressed; (2) his statements made in custody should also be suppressed; (3) evidence regarding Richardson's failure to meet the conditions of his release was irrelevant and should not have been presented to the jury; (4) he was denied effective assistance of counsel; (5) his drug use and status as a felon should have been merged for sentencing purposes; and (6) the case should be remanded for resentencing in light of Booker.

**ANALYSIS**

I. Illegal Seizure

The Fourth Amendment protects against unreasonable searches and seizures. Not every encounter between a police officer and a citizen is an unreasonable seizure under the Fourth Amendment. A seizure has occurred "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968). "[M]ere police questioning does not constitute a seizure." Florida v. Bostick, 501 U.S. 429, 434 (1991). "'[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions.'" Id. (quoting Florida v. Royer, 460 U.S. 491, 497 (1983)). The court determines whether an encounter constitutes a detention or seizure by determining whether, taking into account all the circumstances of the encounter, the police conduct would have communicated to a reasonable person that he was not

free to "'ignore the police presence and go about his business.'" Id. at 473 (quoting Michigan v. Chesternut, 486 U.S. 567, 569 (1988)).

Applying these principles to Richardson's initial encounter with the officers, Richardson was not seized at that time. The officers' squad car stopped on the opposite side of the street. One officer stepped out of the vehicle and called to Richardson from over the top of the squad car. Neither officer displayed a weapon, threatened physical force, or told Richardson to stop. They asked whether Richardson knew who lived in the house, and whether they could talk to him. These circumstances simply do not amount to a seizure under our circuit's precedent. The officers' attempt to apprehend Richardson during his flight also did not amount to a seizure. California v. Hodari D., 499 U.S. 621, 629 (1991) (holding that a suspect who fled a police car was not seized when the police gave chase or shouted to him to stop, but only when the police actually captured and restrained him). Thus, Richardson had not been seized by the time he lost possession of his identification and contraband.

Richardson further argues that his Fourth Amendment rights were violated by the search that resulted in the discovery of the firearm and crack cocaine while he was detained in the squad car. The district court held that Richardson had abandoned those objects, and any expectation of privacy he maintained in the items was lost. United States v. Chandler, 197 F.3d 1198, 1200 (8th Cir. 1999); see also United States v. Davis, 103 F.3d 660, 671-72 (8th Cir. 1996) (recognizing that property may be considered abandoned where it is discarded or disowned). We review that decision for clear error, United States v. Segars, 31 F.3d 655, 658 (8th Cir. 1994), and find none. Accordingly, we affirm the district court's denial of Richardson's motion to suppress.

## II.  Statements Made in Custody

Richardson argues for the first time on appeal that his statements while in the squad car should have been suppressed because he had not been advised of his Miranda rights.  Voluntary statements that are not the product of police questioning or police action likely to produce an incriminating response are admissible.  United States v. McCoy, 200 F.3d 582, 584 (8th Cir. 2000).  Whether specific conduct is designed to produce an incriminating response is determined from the perspective of the suspect, without regard for the actual intent of the police.  We have held that a factual description of the state of an investigation, without additional questioning or coercion, is not an interrogation. See United States v. Allen, 247 F.3d 741, 765 (8th Cir. 2001) (reversed on other grounds) (holding that informing a suspect that he had been identified in a lineup was not in itself an interrogation).

Richardson's interaction with the officers in the squad car was not the functional equivalent of an interrogation because the officers were discussing the evidence between themselves and did not elicit any information from Richardson.  Nor were the officers applying any indirect emotional pressure on Richardson to talk.  The words and actions of the police officers were not the type of actions the police "should know are reasonably likely to elicit an incriminating response" from Richardson.  Rhode Island v. Innis, 446 U.S. 291, 301 (1980).

## III.  Evidence of Post-Arrest Drug Use and Flight

At trial, the prosecution entered evidence that Richardson fled the police when they attempted to apprehend him while he was on pretrial release.  Richardson claims that his evasive behavior, not giving his real name to officers and then fleeing, was not relevant to the firearm charge before the jury, and that the evidence was

prejudicial. The district court allowed the testimony as relevant to Richardson's consciousness of guilt.

This evidence was probative on an essential element of the charges against Richardson: that he was an addict or user of controlled substances. Richardson did not stipulate to this fact, and the prosecution was therefore required to present evidence of Richardson's drug use. The evidence offered consisted of Richardson's failure to attend scheduled drug tests, his flight from the police, and the small amount of cocaine found on his person when he was apprehended. The court found that the flight and his failure to appear for mandatory drug tests showed a consciousness that his drug use would be discovered if he were tested. Because this evidence is directly relevant to an element of the crime charged, the district court did not abuse its discretion by admitting it at trial.

IV. Ineffective Assistance of Counsel

Richardson had four different defense attorneys during his trial, and claims that they were collectively ineffective. Richardson points to numerous errors at the suppression hearings and at trial. These claims are typically not heard on direct appeal, and should be addressed in a § 2255 motion brought pursuant to 28 U.S.C. § 2255. United States v. Logan, 333 F.3d 876, 878 (8th Cir. 2003). Richardson does not claim that any exception applies that would warrant considering his claim on direct appeal.

V. Sentencing Based on Drug Use and Felon Status

Richardson next argues that the counts of conviction for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and being a drug user in possession of a firearm, in violation of 18 U.S.C. § 922(g)(3), arose out of the same act of firearm possession and, therefore, should have been merged at sentencing into a single offense. Richardson was sentenced concurrently, but was assigned a $100 special assessment for each count.

We review de novo the district court's finding that Counts One and Two are separate offenses. United States v. Walker, 380 F.3d 391, 393 (8th Cir. 2004). In United States v. Peterson, 867 F.2d 1110, 1115 (8th Cir. 1989), abrogated on other grounds by Horton v. California, 496 U.S. 128 (1990), we held that separate convictions under § 922(g)(1) and § 922(g)(3) arising out of a single act of firearm possession were not multiplicitous. See Walker, 380 F.3d at 394. Guided, as we are, by the decision of an earlier panel, see United States v. Peltier, 276 F.3d 1003, 1006 (8th Cir. 2002), we must affirm the imposition of separate sentences for each count of conviction.

VI. Booker

Richardson was sentenced after Blakely, and he challenged the constitutionality of the guidelines at his sentencing hearing. The district court rejected his challenge, but stated that the sentence would be the same, 103 months, if the guidelines were found to be unconstitutional. While it was error to sentence under the mandatory guidelines regime, the government has shown that the error was harmless because the court stated it would have imposed the same sentence under an advisory scheme. See United States v. Thompson, 403 F.3d 533, 536 (8th Cir. 2005).

**CONCLUSION**

For the reasons cited above, we affirm.

MELLOY and HEANEY, Circuit Judges, Concurring.

We concur in the majority's opinion because we agree that United States v. Peterson, 867 F.2d 1110 (8th Cir. 1989), directly controls on the facts of the present case. We write separately to note our disagreement with Peterson. We do not believe a defendant should be subjected to multiple convictions and multiple punishments under § 922(g) for a single act of possession that involves a firearm and ammunition. Id. at 1115. We also do not believe a defendant such as Mr. Richardson, who satisfies more than one defendant characteristic subsection of § 922(g), should be subjected to multiple convictions for the possession of a single firearm. Id. Unless and until our en banc court overrules Peterson, however, we are bound to uphold multiple convictions and multiple punishments in cases such as these.

In United States v. Walker, 380 F.3d 391, 394 (8th Cir. 2004) , a panel of our court applied Peterson to hold that a convicted felon's possession of a firearm and ammunition for that firearm comprised two separate offenses. In so holding, we noted a conflict between Peterson and two earlier Eighth Circuit cases, United States v. Powers, 572 F.2d 146 (8th Cir. 1978), and United States v. Kinsley, 518 F.2d 665 (8th Cir. 1975). In those earlier cases, panels of our court held that the simultaneous possession or receipt of multiple firearms could only result in a single conviction and punishment. Powers, 572 F.2d at 150-52; Kinsley, 518 F.2d at 670. In Walker, we concluded that we were bound to apply Peterson because Peterson was directly on point and the earlier cases had been decided under different firearms statutes. Walker, 380 F.3d at 395.

-10-

We noted in Walker that all other circuits had addressed the issue and reached the opposite result. Id. at 393. The conflict between Peterson and the earlier Eighth Circuit cases and the conflict between Peterson and the opinions from the other circuits arose largely because the court in Peterson had applied the "same elements" test from Blockburger v. United States, 284 U.S. 299, 304 (1932), to find that § 922(g) permitted multiple convictions. The other circuits, like the panels in Powers and Kinsley had applied the "unit of prosecution" test from Bell v. United States, 349 U.S. 81, 81 (1955), to conclude that Congress intended the "allowable unit of prosecution" to be an incident of possession regardless of whether a defendant satisfied more than one § 922(g) classification, possessed more than one firearm, or possessed a firearm and ammunition. We believe that the position adopted by the other circuits is correct and should be the law in our circuit. See, e.g., United States v. Munoz-Romo, 989 F.2d 757, 759 (5th Cir. 1993) ("We are satisfied that Congress intended to describe only a single crime that could be committed by seven types of offenders. Thus, the Blockburger rule is not controlling.").

Although the government today argues that multiple convictions are permitted for a single act of possession, it has taken the opposite position before other courts, including the Supreme Court. In United States v. Munoz-Romo, 947 F.2d 170, 176 (5th Cir. 1991), the Fifth Circuit held that convictions under § 922(g)(1) (felon in possession) and § 922(g)(5) (illegal alien in possession) based on a single instance of possession were not multiplicitous. When the defendant in that case petitioned the Supreme Court to grant certiorari, the Solicitor General confessed error and asked the Supreme Court to remand to the Fifth Circuit to vacate one of the two convictions. The Supreme Court granted certiorari, vacated the Fifth Circuit's judgment and remanded for further consideration.

On remand, the Fifth Circuit quoted from the Solicitor General's brief to the Supreme Court. Munoz-Romo, 989 F.2d at 759. Before the Supreme Court, the

-11-

Solicitor General argued that the structure and language of the statute demonstrated "Congress's clear intent not to impose cumulative punishments when the same incident violates two subdivisions of subsection (g)." Id. (quoting the government's brief to the Supreme Court).[5] The Fifth Circuit adopted the position urged by the defendant and the government and directed the district court to vacate one of the convictions. Id. The government's position and the result achieved in the Fifth Circuit are completely at odds with the government's position in the present case.

Suffice it to say, we are concerned by the government's inconsistent approach in its interpretation of § 922(g). While it is fundamental that a party may advance arguments in the alternative, we do not believe that, as a general matter, it is appropriate for the government to advance diametrically opposed theories as to the interpretation of a single criminal statute. This is especially true in the present context, where the government's change of position effectively caused the Supreme Court to forgo the opportunity to review a circuit split on an issue of constitutional significance. Nevertheless, because our court has not addressed this issue en banc, we are bound by Peterson and we concur.

---------------------------------------

---

[5]The Solicitor General's position was essentially the same as that of the Eleventh Circuit in United States v. Winchester, 916 F.2d 601 (11th Cir. 1990). In that case, the Eleventh Circuit noted that if a court were to permit multiple convictions for a single act of possession under § 922, "a convicted felon who is also a fugitive from justice, a drug addict, a 'mental defective,' and an illegal alien could be sentenced to five consecutive terms of imprisonment for the same incident, namely the possession of a firearm." Id. at 607. In the Eighth Circuit, because Peterson would also permit separate convictions based upon the possession of ammunition, a single incident of possession that involved a loaded weapon or a defendant in possession of a firearm with a single bullet in his or her pocket, could result in ten or more punishments for the same incident. We do not believe Congress intended such a result.