# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-4135

_____

United States of America,               *
                                         *
          Appellee,                      *
                                         *   Appeal from the United States
     v.                                  *   District Court for the
                                         *   Western District of Missouri.
Clint L. Ball,                           *
                                         *
          Appellant.                     *

_____

Submitted: June 14, 2007
Filed: August 22, 2007

_____

Before BYE, RILEY, and BENTON, Circuit Judges.

_____

RILEY, Circuit Judge.

Clinton Ball (Ball) was indicted for conspiring to possess with the intent to distribute more than 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, and being a user of a controlled substance in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). Ball filed motions to suppress evidence, which the district court[1] denied. A jury convicted

_____

[1] The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri, adopting the report and recommendation of the Honorable James C. England, United States Magistrate Judge for the Western District of Missouri.

Ball on both counts, and the district court sentenced Ball to 262 months' imprisonment. This appeal followed. We affirm.

## I.    BACKGROUND

In March 2004, Missouri state troopers stopped Eric Fujan (Fujan) for a traffic violation. In Fujan's vehicle, the troopers discovered two and one-half pounds of methamphetamine, some marijuana, a large sum of cash, and scales with methamphetamine residue. The state troopers arrested Fujan.

Fujan later agreed to cooperate with law enforcement and told Drug Enforcement Administration Special Agent Richard Wymer (Agent Wymer) that Fujan intended to sell the two and one-half pounds of methamphetamine to John Harris (Harris). Fujan admitted conducting several large quantity methamphetamine transactions with Harris, which Ball financed. Fujan explained he did not deal directly with Ball because Ball used Harris as a middle man, allowing Ball to distance himself from the conspiracy. Fujan said, however, he met Ball once by chance at Harris's house. Fujan told Agent Wymer most transactions between Fujan and Harris were conducted near Ball's residence. Fujan learned from Harris's other methamphetamine supplier, Jared Calovich (Calovich), that Ball's residence was located at 2720 East Farm Road 188 in Ozark, Missouri. Agent Wymer and Fujan drove by 2720 East Farm Road 188. According to Calovich, Ball kept large sums of cash and methamphetamine at his residence and Ball fronted Harris money to make large-quantity methamphetamine buys from Calovich. Fujan told Agent Wymer that Harris bought over ten and one-half pounds of methamphetamine using money Ball fronted to Harris.

In cooperation with law enforcement, Fujan placed a recorded telephone call to Harris setting a meeting for the purpose of exchanging a better quality of methamphetamine for a supply of lower-grade methamphetamine Fujan previously supplied to Harris. Law enforcement officers arrested Harris when Harris took

possession of the methamphetamine. Following his arrest, Harris agreed to cooperate and told the law enforcement officers he intended to deliver the methamphetamine to Ball. Thereafter, in cooperation with law enforcement, Harris made a recorded telephone call to Ball arranging a controlled delivery.

While the controlled delivery was being arranged, Agent Wymer obtained a search warrant for Ball's residence. Agent Wymer submitted an affidavit detailing Ball's involvement in the conspiracy based on the information provided by Fujan and Harris, along with information provided by other law enforcement agencies regarding drug deals at 2720 East Farm Road 188. Agent Wymer supervised the controlled delivery, while other law enforcement agents executed the search warrant on Ball's residence. At Ball's residence, the officers seized small quantities of drugs, two firearms, ammunition, police scanners, a cooler containing baggies and a cannister of MSM (a methamphetamine cutting agent), and drug paraphernalia.

When Ball arrived at the scene of the controlled delivery, a friend alerted Ball that police were on their way. Ball took off in his vehicle, and after a brief chase, Agent Wymer apprehended Ball and placed him under arrest. Agent Wymer searched the passenger compartment of Ball's vehicle and discovered a drab olive-colored vial with a screw-top lid containing pills and pill fragments, as well as a baggie containing .20 grams of methamphetamine, a police scanner, and a cell phone. Agent Wymer moved Ball's vehicle and completed the vehicle search at Ball's residence where the warrant search was underway.

Ball, Fujan, Calovich, Harris, and four other individuals were indicted for conspiring to possess with intent to distribute methamphetamine. Ball also was indicted for being a user of a controlled substance in possession of a firearm. Ball filed motions to suppress evidence seized during the searches of Ball's residence and vehicle. The district court denied the motions. Fujan, Calovich, and Harris pled guilty and testified against Ball at his trial.

At sentencing, the district court found Ball's 1995 Missouri state conviction for simple possession of a controlled substance triggered the 20-year mandatory minimum sentence under § 841(b)(1)(A).  See 18 U.S.C. § 841(b)(1)(A) ("If any person commits . . . a violation [of § 841(a)] after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment.").  Ball's base offense level of 38 with a criminal history category II produced an advisory United States Sentencing Guidelines range of 262 to 327 months.  The district court sentenced Ball to 262 months' imprisonment on the conspiracy conviction and 120 months' imprisonment on the firearm conviction, to be served concurrently.

Ball appeals, challenging the denial of his motions to suppress, four evidentiary rulings, the sufficiency of the evidence to support his convictions, and the reasonableness of his sentence.

## II.    DISCUSSION
### A.    Motions to Suppress Evidence
#### 1.    Validity of the Search Warrant

Ball argues Agent Wymer's affidavit in support of the search warrant was insufficient to establish probable cause because the information contained in the affidavit was based on the incredible, unreliable, and inconsistent statements of Ball's criminal co-defendants, and also contained factual errors.[2]  When considering a

___

[2]Ball challenges the accuracy of two statements in Agent Wymer's affidavit. The first challenged statement reads: "On March 26, 2004, a consensual recorded telephone call was placed to John HARRIS by Eric FUJAN.  During the ensuing conversation HARRIS indicated he would purchase the remaining methamphetamine 'after dark.'"  Ball argues this is inaccurate because the transcript of the recorded conversation shows that Harris merely told Fujan he could not meet earlier because he would be busy until after dark.  The second challenged statement in the affidavit reads: "On one occasion, 'Jared' [Calovich] drove FUJAN by BALL's residence located at 2720 East Farm Road 188 . . . and identified the residence as 'C.B.'s'

district court's denial of a suppression motion, we review for clear error the district court's factual findings and review de novo its legal conclusions based on those facts. United States v. Salazar, 454 F.3d 843, 846 (8th Cir. 2006).

"The Fourth Amendment requires a showing of probable cause before a search warrant may be issued." United States v. Williams, 477 F.3d 554, 557 (8th Cir. 2007). Probable cause to issue a search warrant is determined under the totality of the circumstances and "exists when an affidavit in support of the warrant sets forth sufficient facts to establish that there is a 'fair probability that contraband or evidence of' criminal activity will be found in the particular place to be searched." United States v. Davis, 471 F.3d 938, 946 (8th Cir. 2006) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).

To prevail on his challenge to the search warrant application, Ball must demonstrate "(1) the affiant knowingly and intentionally, or with reckless disregard for the truth, included false information in or excluded material information from the search warrant affidavit; and (2) the affidavit, excluding the false inclusion or including the missing material information, would not support a finding of probable cause." Id. (citing Franks v. Delaware, 438 U.S. 154, 155-56 (1978)). Mere negligence or an innocent mistake in the application does not make a search warrant void. Id.

In his affidavit in support of the search warrant, Agent Wymer included statements Fujan and Harris made to law enforcement officers, which then detailed: (1) numerous methamphetamine transactions between Fujan and Harris; (2) Harris's silent partner whom he identified as "C.B." or "Clint"; (3) Harris's delivery of the

residence." Ball argues this statement is inaccurate because at trial, Calovich testified he had never met Ball, and therefore Calovich's statement to Fujan was not based on Calovich's personal knowledge. Ball's arguments exaggerate minor factual discrepancies that make little, if any, material difference.

methamphetamine to Ball after buying it from Fujan; (4) the locations, the amounts of money, and the quantities of methamphetamine involved in those transactions; (5) information provided to Fujan by Calovich, identifying 2720 East Farm Road 188 as "C.B's" residence and the location of several drug transactions; and (6) Agent Wymer's verification that Ball lived at 2720 East Farm Road 188. The affidavit also included information Agent Wymer obtained from the Missouri Highway Patrol, Combined Ozarks Multi-jurisdictional Enforcement Team (COMET) Drug Task Force, and the Greene County (Missouri) Sheriff's Department regarding investigations of drug activity at 2720 East Farm Road 188. The affidavit listed an account of Agent Wymer's follow-up investigation after receiving the information from the cooperating witnesses and the other law enforcement agencies. At the suppression hearing, Agent Wymer testified that nothing in the affidavit was false, misleading, or intentionally omitted.

We conclude the district court properly determined the statements made by Fujan and Harris, which Agent Wymer relied upon in his affidavit, had several indicia of reliability including: (1) the information was not from an anonymous or confidential informant; (2) the affidavit mentioned Fujan and Harris by name; (3) Fujan and Harris both were heavily involved in the conspiracy and Harris had firsthand knowledge of Ball's role in the conspiracy; (4) the statements made by Fujan and Harris were against their penal interests at the time the statements were made; and (5) the statements were corroborated by other law enforcement sources. See United States v. Caswell, 436 F.3d 894, 897 (8th Cir. 2006) (stating a magistrate judge's probable cause determination should be given great deference if it is based on a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place" (quoting Gates, 462 U.S. at 238)).

Even if we were to assume the affidavit contained the alleged inaccurate statements, those statements were not material and did not taint material information included in the affidavit.  See United States v. Allen, 297 F.3d 790, 794 (8th Cir. 2002) (concluding facts are considered for their cumulative, not independent meaning).  Thus, Ball's challenge fails because even without the allegedly inaccurate statements, the search warrant affidavit provided probable cause to support the search warrant.  See Davis, 471 F.3d at 947.

Ball failed to demonstrate Agent Wymer knowingly and intentionally included false information in or excluded material information from the search warrant application.  The district court properly denied Ball's motion to suppress evidence obtained from the warrant search of Ball's residence.

### 2.    Vehicle Search

Ball next argues the warrantless search of his vehicle violated his Fourth Amendment rights, and therefore the evidence obtained should have been suppressed. Ball asserts the search incident to arrest exception to the Fourth Amendment's warrant requirement does not apply, because the second portion of the vehicle search was not contemporaneous with his arrest.

It is well settled "a lawful custodial arrest establishes authority to conduct a full search of the arrestee's person, and that such a search is 'not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment.'"  United States v. Hrasky, 453 F.3d 1099, 1101 (8th Cir. 2006) (quoting United States v. Robinson, 414 U.S. 218, 235 (1981)), cert. denied, 127 S. Ct. 2098 (2007).  Thus, "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile."  Id. at 1100 (quoting New York v. Belton, 453 U.S. 454, 460 (1981), which sets forth the "bright-line" rule permitting warrantless vehicle searches incident to arrest).

Contemporaneous with Ball's lawful custodial arrest, Agent Wymer searched the passenger compartment of Ball's vehicle, which constituted a permissible warrantless search under Belton. See id. at 1100-02. The contraband discovered during that search–the vial of pills, the baggie containing a small quantity of methamphetamine, a police scanner, and Ball's cell phone–provided probable cause for Agent Wymer to perform the more extensive and non-contemporaneous warrantless search of the vehicle under the "automobile exception" to the search warrant requirement. See United States v. Wells, 347 F.3d 280, 287 (8th Cir. 2003) ("The warrantless search of a vehicle is constitutional pursuant to the 'automobile exception' to the warrant requirement, if law enforcement had probable cause to believe the vehicle contained contraband or other evidence of a crime before the search began.").

Thus, the district court did not err in denying Ball's motion to suppress evidence obtained from the warrantless search of Ball's vehicle.

### B. Evidentiary Rulings

Ball argues the district court abused its discretion by (1) limiting Ball's recross-examination of Fujan, (2) admitting evidence seized incident to Fujan's arrest, (3) admitting a vial Ball used to carry personal-use quantities of methamphetamine, and (4) allowing testimony and physical evidence showing Ball tampered with a pretrial urinalysis test. We review de novo the district court's interpretation and application of the rules of evidence and for abuse of discretion its factual findings supporting the evidentiary rulings. See United States v. Watler, 461 F.3d 1005, 1007 (8th Cir. 2006), cert. denied, 127 S. Ct. 2284 (2007).

### 1. Recross-examination of Fujan

During recross-examination of Fujan, Ball's counsel asked why Fujan waited until the week before trial to inform prosecutors Fujan personally conducted a one pound methamphetamine transaction with Ball, during which Ball threatened Fujan

with a revolver. The district court sustained the government's objection that the question was beyond the scope of redirect examination. The trial transcript shows on direct examination the government asked Fujan questions regarding the personal transaction with Ball, and Ball's counsel, in turn questioned Fujan on cross-examination. The government did not raise the issue again on redirect. Thus, the district court was within its discretion in limiting that portion of Ball's recross-examination of Fujan regarding the personal transaction with Ball as beyond the scope of redirect examination. See United States v. Riggi, 951 F.2d 1368, 1374 (3d Cir. 1991) ("As a general rule, a trial court has wide discretion to restrict recross-examination, especially when no new matters have been raised on redirect.").

### 2. Evidence Seized Incident to Fujan's Arrest

The district court allowed into evidence methamphetamine seized incident to Fujan's arrest. Ball argues the admission was unduly prejudicial because the jury likely connected Fujan's methamphetamine to Ball. We disagree. The conspiracy was ongoing at the time of Fujan's arrest; therefore, any acts committed in furtherance of the conspiracy were attributable to all members of the conspiracy. See United States v. Pierce, 479 F.3d 546, 549 (8th Cir. 2007) ("A defendant who has entered into a criminal conspiracy is responsible for offenses committed by fellow conspirators if the defendant was a member of the conspiracy when the offense was committed and if the offense was committed in furtherance of and as a foreseeable consequence of the conspiracy.") (discussing the jury instruction application of the co-conspirator liability doctrine established in Pinkerton v. United States, 328 U.S. 640 (1946)). The district court did not abuse its discretion by allowing evidence of the drugs seized incident to Fujan's arrest.

### 3. Container with Methamphetamine

The district court also admitted into evidence a vial Ball used for personal-use amounts of methamphetamine, which Agent Wymer found during the vehicle search

incident to Ball's arrest. Ball argues the vial had no identifying markings; therefore, Agent Wymer could not positively identify the vial as belonging to Ball.

Under Federal Rule of Evidence 901, before evidence can be admitted, it must be authenticated or identified. Rule 901 "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). Agent Wymer's identification of the vial and his testimony that he found the vial during the passenger compartment search of Ball's vehicle easily satisfies the requirements of Rule 901. See United States v. Hyles, 479 F.3d 958, 968 (8th Cir. 2007) (holding under the Rule 901 standard, "the party 'need only demonstrate a rational basis for its claim that the evidence is what the proponent asserts it to be'" (quoting United States v. Coohey, 11 F.3d 97, 99 (8th Cir. 1993))).

### 4. Tampered Urinalysis Test

The district court admitted testimony that while on pretrial release, Ball tampered with a urinalysis test and then acknowledged using methamphetamine four days earlier. Ball argues this was uncharged criminal conduct, which is typically inadmissible under Federal Rule of Evidence 404(b).

Ball was charged with being a drug user in possession of a firearm, in violation of § 922(g)(3). Because Ball did not stipulate to being a drug user, the government was required to prove that element of the offense. Evidence demonstrating Ball tampered with a urinalysis test and used methamphetamine while on pretrial release, therefore, was directly relevant to an element of the charged offense, and thus admissible. See United States v. Richardson, 427 F.3d 1128, 1133 (8th Cir. 2005) (per curiam) (holding the district court did not abuse its discretion by admitting evidence of the defendant's flight from police and his failure to appear for mandatory drug tests because such evidence showed the defendant knew his drug use would be discovered if he were tested, and therefore his flight was directly relevant to an element of the charge of being a drug user in possession of a firearm under

§ 922(g)(3)), <u>vacated on other grounds by</u> 439 F.3d 421, 422 (8th Cir. 2006) (en banc) (per curiam). The district court did not abuse its discretion by admitting evidence that Ball tampered with his urinalysis test.

### C.    Sufficiency of the Evidence

Ball next argues the evidence presented at trial was insufficient to establish a conviction, attacking the credibility of the government's witnesses and the lack of physical evidence linking Ball to the drugs and firearms. We review de novo the sufficiency of the evidence supporting a criminal conviction. <u>United States v. Spears</u>, 469 F.3d 1166, 1169 (8th Cir. 2006) (en banc), <u>petition for cert. filed</u> (U.S. Mar. 2, 2007) (No. 06-9864).

A conviction can rest alone on the uncorroborated testimony of co-conspirators. <u>See</u> <u>United States v. McAtee</u>, 481 F.3d 1099, 1104-05 (8th Cir. 2007) (concluding an accomplice's testimony is sufficient to support a conviction if the testimony is not incredible or facially insubstantial). "The test for rejecting evidence as incredible is extraordinarily stringent and is often said to bar reliance only on testimony asserting facts that are physically impossible." <u>Id.</u> at 1105 (quoting <u>United States v. Crenshaw</u>, 359 F.3d 977, 988 (8th Cir. 2004)).

The trial testimonies of Fujan, Harris, and Calovich were corroborated by (1) Ball's appearance at the scheduled drug delivery meeting with Harris, (2) Ball's possession of a police scanner and methamphetamine at the time of his arrest, and (3) firearms, methamphetamine, MSM, and drug distribution paraphernalia recovered from Ball's residence. The testimonies of law enforcement officers and other physical evidence further corroborated the co-conspirators' testimonies. We conclude there was sufficient evidence to support the jury's verdicts.

**D. Sentencing Issues**

**1. Prior Conviction**

Ball first argues the district court erred by finding his 1995 Missouri state drug conviction for possession of less than .20 grams of methamphetamine, for which Ball received a suspended sentence, qualified as a final conviction, and thereby subjected Ball to the 20-year mandatory minimum sentence under § 841(b)(1)(A). We review de novo questions of statutory interpretation. United States v. Templeton, 378 F.3d 845, 849 (8th Cir. 2004).

We previously have held suspended sentences trigger § 841(b)(1)(A)'s 20-year mandatory minimum sentence. See United States v. Davis, 417 F.3d 909, 912-13 (8th Cir. 2005) (concluding a Missouri felony drug conviction for which the defendant received a suspended sentence and term of probation was a qualifying conviction for purposes of § 841(b)'s 20-year mandatory minimum sentence). Ball's reliance on United States v. Stallings, 301 F.3d 919, 921 (8th Cir. 2002), is misplaced. In Stallings, we held the defendant's prior California conviction did not qualify under § 841(b), because the government had not met the requisite burden of proving whether, under California law, the defendant's prior California conviction had ever been entered. Id. at 921-22. However, in United States v. Slicer, 361 F.3d 1085, 1086-87 (8th Cir. 2004), under facts similar to the present case, we distinguished and declined to follow Stallings, and held a Missouri felony drug conviction for which the defendant received a suspended sentence and served supervised probation was a final conviction for purposes of § 841(b). See also Davis, 417 F.3d at 912-13; United States v. Franklin, 250 F.3d 653, 664-65 (8th Cir. 2001) (predating Stallings and holding under federal law, "deferred adjudications or probated sentences constitute convictions in the context of § 841" (quotation omitted)); United States v. Ortega, 150 F.3d 937, 947-48 (8th Cir. 1998) (same). The district court did not err in finding Ball's 1995 Missouri state drug conviction was a qualifying offense under § 841(b).

## 2.     Reasonableness

Ball finally argues his sentence is unreasonable.  Our review for reasonableness is similar to the abuse of discretion review standard.  United States v. Soperla, __ F.3d __, __, No. 06-3316, 2007 WL 2141678, at *2 (8th Cir. July 27, 2007).  Ball's advisory Guidelines range was 262 to 327 months.  Because Ball's sentence of 262 months' imprisonment was (1) at the bottom of the properly calculated advisory Guidelines range, (2) only 22 months above the applicable 20-year statutory mandatory minimum, and (3) requested by his own attorney, we accord the sentence a presumption of reasonableness.  See Rita v. United States, 551 U.S. __, __, 127 S. Ct. 2456, 2468 (2007); United States v. Harris, __ F.3d __, No. 06-2892, 2007 WL 1964651, at *3 (8th Cir. July 9, 2007); see also United States v. Thundershield, 474 F.3d 503, 510 (8th Cir. 2007).

Ball's arguments do not rebut this presumption.  First, Ball contends his sentence is disparate as compared to his co-conspirators, and thus unreasonable.[3]  As the district court noted, Ball's co-conspirators received reductions for substantial assistance and acceptance of responsibility for which Ball was not eligible.  In addition, as the government argued at the sentencing hearing, trial testimony illustrates Ball "was the largest consumer of methamphetamine" and "the main distributor or warehouser" in the conspiracy, who would "redistribute quantities [of methamphetamine] in southwest Missouri," making Ball significantly more culpable than his co-conspirators.  Thus, as the district court concluded, Ball was not similarly situated to his co-conspirators and disparity among their sentences was warranted.  See United States v. Gallegos, 480 F.3d 856, 859 (8th Cir. 2007) (per curiam).

_____

[3]As we have noted, "§ 3553(a)(6) may more appropriately apply to disparities on a national level and not within the same conspiracy, but we continue to follow our own precedent."  United States v. Pepper, 486 F.3d 408, 413 n.2 (8th Cir. 2007) (internal quotation omitted); see also United States v. Parker, 462 F.3d 273, 277 (3d Cir.) (concluding "Congress's primary goal in enacting § 3553(a)(6) was to promote national uniformity in sentencing rather than uniformity among co-defendants in the same case"), cert. denied, 127 S. Ct. 462 (2006)).

We also reject Ball's argument his sentence is unreasonable because the United States drug statutes and advisory Guidelines are among the harshest in the world. We previously have explained, "Our court, as an unelected body, cannot impose its sentencing policy views and dismiss the views of the peoples' elected representatives. The judiciary must defer to Congress on sentencing policy issues." Spears, 469 F.3d at 1178. Nothing in the record persuades us the district court abused its discretion in sentencing Ball to 262 months' imprisonment, which sentence is not unreasonable.

## III. CONCLUSION

We affirm Ball's convictions and sentence.

_____