# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1236

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Reginald Chandler, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted:  September 14, 1999

Filed:   December 2, 1999

_____

Before RICHARD S. ARNOLD, BRIGHT, and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

Former St. Louis Police Officer Reginald Chandler appeals his conviction for unlawful distribution of crack cocaine and for possession of crack cocaine and heroin. The possession charges were based upon narcotics found during a warrantless search of a duty bag Chandler left in the police station when he was suspended without pay for suspected drug trafficking.  On appeal, Chandler argues the district court[1] erred in

_____

[1]The HONORABLE DONALD J. STOHR, United States District Judge for the Eastern District of Missouri.

refusing to suppress this evidence and in excluding an FBI interview report that allegedly impeached the credibility of two government witnesses. We affirm.

## I. Background

In October 1995, the Internal Affairs Division (IAD) of the St. Louis Police Department began investigating Chandler and other officers suspected of trafficking in confiscated narcotics. After roll call on June 6, 1996, Chandler was summoned to the office of Major Robert Zambo, where he arrived carrying what Major Zambo described as "a duty bag that you carry equipment in as a police officer." IAD Captain Paul Nocchiero advised Chandler that he was being suspended without pay. Chandler was then escorted from Zambo's office to police headquarters for processing of the suspension. IAD officers relieved Chandler of his badge and weapon, told him he could not return to the station pending reinstatement, and padlocked his police lockers.

After the others left his office, Major Zambo phoned Captain Nocchiero to advise that Chandler had neglected to take the duty bag with him. Nocchiero told Zambo to secure the bag until IAD retrieved it. Zambo placed the bag in a locked office closet. Zambo and Nocchiero forgot about the duty bag for the next eight months. Chandler made no inquiry about the bag, but in November 1996 he asked whether he could pick up a pair of boots from his locker. Captain Nocchiero advised that Chandler could retrieve the boots if he consented to a search and inventory of the locker's contents. Chandler did not pursue this inquiry further. On February 20, 1997, Major Zambo discovered the duty bag as he prepared to transfer to a new post. IAD retrieved the bag and conducted a warrantless search which uncovered 0.30 grams of crack cocaine and 0.80 grams of heroin. IAD then obtained a warrant and searched Chandler's police lockers, which contained no contraband and no boots.

Chandler was indicted on two counts of unlawful distribution for allegedly selling crack cocaine to Roy Jackson and Demetrius Jones prior to Chandler's

suspension from duty, and for two counts of possession based on the cocaine and heroin found in his duty bag. The district court denied Chandler's motion to suppress evidence from the duty bag, concluding he abandoned the bag and in any event the narcotics would inevitably have been discovered. The jury convicted Chandler of the two possession counts. It acquitted him on the charge of selling crack cocaine to Roy Jackson but convicted him of selling crack cocaine to Demetrius Jones.

## II.  The Fourth Amendment Issue

Chandler argues that the warrantless search of his duty bag violated the Fourth Amendment prohibition against unreasonable searches and seizures. In general, the Fourth Amendment protects against government conduct that infringes "an expectation of privacy that society is prepared to consider reasonable." United States v. Jacobsen, 466 U.S. 109, 113 (1984). The question of when a public employer may conduct a warrantless search of an employee's effects raises thorny Fourth Amendment issues because employees have reasonable expectations of privacy at work, but employers have legitimate interests that may sometimes justify warrantless searches of the workplace. For example, in O'Connor v. Ortega, 480 U.S. 709, 717 (1987), state hospital officials placed a physician on administrative leave for suspected improprieties and conducted a warrantless search of his office, desk, and file cabinets. The Supreme Court reversed the grant of summary judgment for the physician in his § 1983 damage action. But the fifth Justice to join the Court's 5-4 majority criticized the plurality for adopting a case-by-case standard "so devoid of content that it produces rather than eliminates uncertainty in this field." O'Connor, 480 U.S. at 730 (Scalia, J., concurring).

In this case, the public employer is a law enforcement agency that was engaged in a criminal investigation of a suspended employee's on-duty activities. A police officer's personal equipment or duty bag is entitled to at least some Fourth Amendment protection, like the briefcase in United States v. Schleis, 582 F.2d 1166, 1170 (8th Cir.

1978) (en banc). The Fourth Amendment's probable cause and warrant requirements are particularly essential and suitable when the government is engaged in a criminal investigation. The district court nonetheless upheld a warrantless search of Chandler's bag under the doctrines of abandonment and inevitable discovery. On the unusual facts of this case, we agree, though we believe that these doctrines do not provide alternative grounds, as they would in most cases, but rather a single basis for concluding that the employer's search of Chandler's bag was constitutionally reasonable.

A warrantless search of abandoned property is constitutional because "any expectation of privacy in the item searched is forfeited upon its abandonment." United States v. Tugwell, 125 F.3d 600, 602 (8th Cir. 1997), cert. denied, 118 S. Ct. 721 (1998). "In determining whether property has been abandoned for Fourth Amendment purposes, the court must look to the totality of the circumstances, noting in particular two factors: whether the suspect denied ownership of the property and whether he physically relinquished the property." United States v. Liu, 180 F.3d 957, 960 (8th Cir. 1999). We review the district court's finding that property was abandoned for clear error. See United States v. Segars, 31 F.3d 655, 658 (8th Cir. 1994), cert. denied, 513 U.S. 1099 (1995).

The abandonment facts in this case are ambiguous. Chandler left his duty bag at his place of work when he was suspended from duty. That is not strong evidence of abandonment, nor did Chandler ever deny or disclaim ownership of the bag and its contents. However, he left the bag in Major Zambo's office, not in his own locker or office. Although the circumstances at the time were no doubt stressful, that was evidence he "objectively relinquished his expectation of privacy in the bag." United States v. Landry, 154 F.3d 897, 899 (8th Cir. 1998), cert. denied, 119 S. Ct. 836 (1999). Moreover, in the following months, Chandler failed to reclaim or even inquire about the bag, further evidence of its abandonment. Compare United States v. Hoey, 983 F.2d 890, 892-93 (8th Cir. 1993). Finally, we agree with the district court that Chandler's inquiry about his non-existent boots is evidence that he either abandoned

the duty bag before that inquiry, or decided to abandon it when IAD's response demonstrated that the Department would inventory any property Chandler attempted to reclaim.

In these circumstances, the district court's finding that Chandler abandoned the duty bag is supported by substantial evidence, a critical part of the clearly erroneous standard of review. See United States v. Ruiz, 935 F.2d 982, 984 (8th Cir. 1991). But there is a further reason why the warrantless search of his duty bag was constitutionally reasonable. Chandler argues on appeal that the IAD officers should have obtained a warrant to search the bag when it was found in Major Zambo's locked closet eight months after Chandler's suspension. That was not his employer's relevant alternative.

When Chandler was indefinitely suspended from duty, the Police Department had the right to reclaim any of its property in his possession. To that end, IAD officers padlocked Chandler's lockers and advised that he could not return to his former police station. The Department would reasonably believe that Chandler's duty bag, like his lockers, might contain Department property (as the subsequent search confirmed). Therefore, had Chandler attempted to leave police headquarters with the bag at the time of his suspension, Captain Nocchiero would have inventoried its contents, and the narcotics would have been discovered. Chandler left the bag in Major Zambo's office (whether intentionally or inadvertently is irrelevant to our analysis). Had he later retrieved the bag, the Department would have inventoried the bag with Chandler before relinquishing its custody. Again, the narcotics would have been discovered.

Instead, Zambo found the bag in storage many months later. As Chandler's employer, the Department could have -- and perhaps as a matter of fair procedure should have -- contacted Chandler, advised that his duty bag had been discovered, and asked whether he wished to reclaim it. If Chandler said no, that would be an unambiguous abandonment for Fourth Amendment purposes, and the bag could then be searched. See Tugwell, 125 F.3d 600, 603 (8th Cir. 1997), cert. denied, 118 S. Ct.

721 (1998) (failure to claim luggage at a bus station after three public announcements is a denial of ownership). If Chandler said yes, the Department would have opened the bag with him to recover any of its property. In either event, the narcotics would have been discovered and lawfully seized. Thus, the inevitable discovery doctrine applies, not because the government was actively pursuing a substantial alternative line of investigation, which is the typical inevitable discovery situation,[2] but because the law enforcement agency's legitimate interests as employer would have inevitably led it to discover the contraband before Chandler, a suspended employee, could remove it from the workplace.

### III. The Hearsay Issue

Count One of the indictment charged Chandler with selling crack cocaine to Roy Jackson, and Count Two charged him with selling crack cocaine to Demetrius Jones on another occasion in 1993. Both Jackson and Jones were killed before Chandler's 1998 trial, so the government's principal proof of these transactions was the testimony of Roy Jones, Jackson's father and Demetrius Jones's uncle. As to the first transaction, Roy Jones testified that he saw Chandler come to the door of a residence where Jackson and his friends were gambling. Jackson left in Chandler's squad car and returned a few minutes later with a plastic bag containing about two ounces of crack cocaine. As to the second transaction, Roy Jones testified that he saw Chandler hand Demetrius Jones a plastic bag through a squad car window and receive money in return. Demetrius Jones asked Roy Jones to test what was in the plastic bag, and Roy Jones confirmed it was crack cocaine.

In describing the first transaction, Roy Jones testified over Chandler's hearsay objection that Jackson said he paid $300 for the crack cocaine he brought back from

---

[2]See United States v. Hammons, 152 F.3d 1025, 1026 (8th Cir. 1998), cert. denied, 119 S. Ct. 849 (1999).

Chandler's squad car. In response, the defense offered evidence that the report of FBI Special Agent Hank Vera, who interviewed Jackson prior to his death, contained no statement by Jackson that he had ever purchased crack cocaine from Chandler. The district court excluded the interview report, and Chandler challenges that ruling on appeal. Noting that Rule 806 of the Federal Rules of Evidence allows impeachment of a hearsay declarant "by any evidence which would be admissible for those purposes if the declarant had testified as a witness," Chandler argues the court abused its discretion because the omission in Vera's report impeached Jackson's hearsay statement that he paid $300 for the crack cocaine, which in turn impeached the credibility of Roy Jones. See United States v. Ballew, 40 F.3d 936, 941 (8th Cir. 1994) (standard of review), cert. denied, 514 U.S. 1091 (1995).

We reject this contention for two reasons. First, the interview report omission was not legitimate Rule 806 impeachment. Jackson's hearsay statement to Roy Jones did not identify who sold him the crack cocaine, only what he paid for it. The omission in Agent Vera's report tended to disprove the inference to be drawn from what Roy Jones observed -- that Jackson bought the crack from Chandler while in Chandler's squad car -- not Jackson's hearsay statement that the crack cost $300. Thus, when offered as impeachment of Jackson's hearsay, the omission in Vera's report is an example of "silence . . . so ambiguous that it is of little probative force." United States v. Hale, 422 U.S. 171, 176 (1975); see United States v. Leonardi, 623 F.2d 746, 756-57 (2d Cir.), cert. denied, 447 U.S. 928 (1980). Second, even if the district court erred in excluding Vera's interview report, it was harmless error. The jury acquitted Chandler of the charge that he sold crack cocaine to Jackson. The jury convicted Chandler of selling crack to Demetrius Jones, a transaction Roy Jones testified he actually observed. Chandler's contention that the Vera interview report would have impeached this aspect of Roy Jones's testimony is unpersuasive speculation.

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.