THE STATE OF OHIO, APPELLANT, *v.* GOULD, APPELLEE.

[Cite as *State v. Gould,* 131 Ohio St.3d 179, 2012-Ohio-71.]

*A warrantless search of abandoned property does not violate the Fourth Amendment, because any expectation of privacy is forfeited upon abandonment—To establish a legitimate expectation of privacy in property protected by the Fourth Amendment, a person must exhibit a subjective expectation of privacy that, viewed objectively, is reasonable under the circumstances.*

(No. 2010-1315—Submitted September 7, 2011—Decided January 17, 2012.)

APPEAL from the Court of Appeals for Lucas County,

No. L-08-1383, 2010-Ohio-3437.

———————————

**SYLLABUS OF THE COURT**

1. A warrantless search of abandoned property does not violate the Fourth Amendment because any expectation of privacy is forfeited upon abandonment. (*United States v. Chandler* (C.A.8, 1999), 197 F.3d 1198, followed.)

2. To establish a legitimate expectation of privacy in property protected by the Fourth Amendment, a person must exhibit a subjective expectation of privacy that, viewed objectively, is reasonable under the circumstances. (*Smith v. Maryland* (1979), 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220, followed.)

———————————

**O'DONNELL, J.**

{¶ 1} A Lucas County jury convicted Dennis Gould of two counts of rape, one count of gross sexual imposition, six counts of pandering sexually

oriented material involving a minor, and five counts of illegal use of a minor in nudity-oriented material, all based on images located on the hard drive of his computer. The Sixth District Court of Appeals reversed the convictions and held that the trial court should have excluded all evidence obtained from the warrantless search of Gould's hard drive.

{¶ 2} We accepted the state's appeal on the following proposition of law: "The exclusionary rule applies only when a violation of Fourth Amendment rights is the result of deliberate, reckless, or grossly negligent disregard of Fourth Amendment rights or involves circumstances of recurring or systemic negligence. Evidence may not be excluded unless the conduct is 'sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.' *Herring v. United States* (2009), [555] U.S. [135], 129 S.Ct. 695, 172 L.Ed.2d 496, explained."

{¶ 3} In order to resolve this case, however, it is not necessary to apply *Herring* because the evidence demonstrates that Gould had abandoned the hard drive, permitting the police to conduct a constitutional warrantless search of it.

{¶ 4} Accordingly, because Gould did not have an objectively reasonable expectation of privacy in the hard drive, the search did not violate the Fourth Amendment, and we therefore reverse the decision of the court of appeals and reinstate the judgment of conviction and sentence entered by the trial court.

**Facts and Procedural History**

{¶ 5} In December 2005, after Priority Trucking laid him off from his job as a truck driver, Gould moved in with his mother, Sharon Easterwood. At that time, he gave her a computer hard drive and told her to keep it and not "let anybody get their hands on it." She then put it in an envelope and placed it in her nightstand. In May 2006, Gould moved into his own apartment, taking his belongings, but not the hard drive.

**{¶ 6}** About a month later, Gould's twin brother, Douglas, told his mother that she should get the hard drive out of her house because it probably contained child pornography. As a result, she returned it to Gould.

**{¶ 7}** Thereafter, in August 2006, after Gould's older brother Gregory moved in with him, Gould stole Gregory's truck and left Toledo without taking any of his belongings from the apartment, and he never advised anyone of his whereabouts.

**{¶ 8}** Sometime later, Gregory sold Gould's belongings at a garage sale, but before the sale, Easterwood retrieved the hard drive because of her concerns about its contents.

**{¶ 9}** On September 6, 2006, Easterwood delivered the hard drive to Detective Regina Lester in the Special Victims Unit of the Toledo Police Department. According to Lester, Easterwood told her that it had been in her possession since December 2005. Easterwood further advised Lester that she believed that Gould had abandoned it and that she did not want it in her home because of her suspicions about its contents. Lester did not attempt to access the data on the hard drive but booked it into the property room and began efforts to locate Gould.

**{¶ 10}** When Easterwood received a billing statement for Gould's cell phone at her home, she gave the cell-phone number to Lester, who tried unsuccessfully to contact him on several occasions and left a message asking him to return her call. Gould never responded to Lester.

**{¶ 11}** Almost three months later, on December 2, 2006, Easterwood consented to a police search of the hard drive. Detective Jim Dec of the Toledo Police Computer Crimes Office conducted a forensic analysis and discovered child pornography, including images of Gould engaging in sexual conduct with a seven-year-old child. Police identified the victim as the daughter of Gould's former girlfriend.

**{¶ 12}** Federal marshals ultimately arrested Gould in Lansing, Michigan, and returned him to Toledo. Upon questioning by Lester on June 3, 2007, Gould explained that he had left the hard drive in his apartment with his other belongings when he moved to Michigan and asserted that his mother had obtained it from his apartment without his knowledge.

**{¶ 13}** Based on the images discovered on the hard drive, a grand jury subsequently indicted him on two counts of rape, one count of gross sexual imposition, six counts of pandering sexually oriented material involving a minor, and five counts of illegal use of a minor in nudity-oriented material or performance.

**{¶ 14}** Gould moved to suppress the evidence obtained following the search of the hard drive, asserting that police had illegally searched for it in violation of the Fourth Amendment. The trial court denied the motion, finding that "Lester reasonably could have believed that [Gould] had abandoned any reasonable expectation of privacy in the hard-drive," such that the search did not violate the Fourth Amendment.

**{¶ 15}** The matter proceeded to trial, and a jury returned verdicts finding Gould guilty on all counts. The trial court sentenced him to two concurrent life sentences for the rape convictions, concurrent with a term of four years on the gross-sexual-imposition conviction, but consecutive to an aggregate term of incarceration of 13 years and 7 months on the convictions for pandering and illegal use of a minor in nudity-oriented material.

**{¶ 16}** On appeal, the appellate court reversed the judgment of conviction and held that the trial court should have suppressed the evidence obtained from the hard drive as the product of an illegal search, stating that "Lester's subjective belief that the hard drive had been abandoned was unsupported by the objective facts and Easterwood's testimony." *State v. Gould*, Lucas App. No. L-08-1383, 2010-Ohio-3437, at ¶ 31. It therefore concluded that "the state failed to

demonstrate by credible, competent evidence that the hard drive was abandoned." Id.

**{¶ 17}** The state appealed that decision to this court, relying on *Herring v. United States* (2009), 555 U.S. 135, 129 S.Ct. 695, 172 L.Ed.2d 496, and urging that the exclusionary rule should apply only when a violation of the Fourth Amendment is the result of deliberate, reckless, or grossly negligent disregard of Fourth Amendment rights or when it involves circumstances of recurring or systemic negligence. The state further maintains that Lester acted reasonably in determining that Gould had abandoned the hard drive and having it searched. It also contends that because the facts demonstrate that Gould had abandoned the hard drive, the Fourth Amendment did not preclude the search, and the deterrent effect of excluding the hard drive does not outweigh the social cost of releasing a child rapist.

**{¶ 18}** Gould urges that *Herring* refers to only negligent errors committed by third parties, not mistakes made by the police conducting a search. Thus, suppressing the hard drive in this case will deter police from making similar mistakes. Moreover, because application of the exclusionary rule does not turn on the facts of a particular case, Gould argues that the societal costs of suppressing evidence should not be determined by the gravity of the crime. Finally, he asserts that a review of the evidence demonstrates that Lester could not have reasonably believed that he had abandoned the hard drive, and therefore, the trial court should have suppressed the evidence against him.

**{¶ 19}** Accordingly, we are asked whether the court of appeals correctly determined that the evidence against Gould should have been suppressed. To decide this case, however, it is not necessary to reach the issue addressed in *Herring,* because the case is resolved by reviewing the basic question we must first consider under these facts: Did Gould have a reasonable expectation of privacy in the hard drive at the time the police searched it?

## Reasonable Expectation of Privacy

{¶ 20} The United States Supreme Court has long held that the Fourth Amendment prohibition against unreasonable searches does not apply to property that has been voluntarily abandoned, because society does not recognize an expectation of privacy in abandoned property as being objectively reasonable.

{¶ 21} In *Smith v. Maryland* (1979), 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220, the court adopted Justice Harlan's concurring-opinion analysis in *Katz v. United States* (1967), 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576, explaining that to establish a legitimate expectation of privacy in property protected by the Fourth Amendment, a person must exhibit a subjective expectation of privacy that, viewed objectively, is reasonable under the circumstances.

{¶ 22} The facts in *United States v. Hershenow* (C.A.1, 1982), 680 F.2d 847, which arose out of a mail-fraud investigation into fraudulent billing of insurance companies by physicians, closely parallel this case. In *Hershenow*, shortly after federal authorities executed a search warrant at his office, Steven Hershenow, a physician, delivered a sealed box to Nelson Crawford, a maintenance worker at a nursing home where Hershenow practiced, with instructions to "[p]ut this in the barn and keep it." Id. at 854. More than three months later, a nun working at the nursing home discovered the box and told the administrator of the nursing home about it. Id. Ultimately, a postal inspector looked through the box and discovered patient records and appointment books that had been missing during the earlier search of Hershenow's office. Id. at 855.

{¶ 23} Hershenow moved to suppress the evidence obtained from this warrantless search, claiming violation of his Fourth Amendment rights. The district court denied the motion, finding that Hershenow had abandoned the box and had no reasonable expectation of privacy in the records "once they were

stashed in the barn." See id. A jury subsequently found him guilty of ten counts of mail fraud. Id. at 850.

{¶ 24} On appeal, the First Circuit, applying *Smith*, affirmed the judgment and concluded that Hershenow had no objectively justifiable expectation of privacy in the box and determined that the search did not violate the Fourth Amendment. Id., 680 F.2d at 855-856.

{¶ 25} While the court acknowledged that Hershenow had a subjective expectation of privacy in the box as determined from his intent in taking the box to the nursing home to hide it, it also noted that "a legitimate expectation of privacy means more than a subjective expectation of keeping incriminating evidence hidden," and it considered whether Hershenow had an objectively reasonable expectation of privacy in the contents of the box. Id.

{¶ 26} The court stated:

{¶ 27} "The following factors weigh against an objective expectation of privacy: Hershenow did not know the location of the box except that it was somewhere in the barn (if Crowford [sic] had followed his instruction); Hershenow did not have regular access to the barn; at least four months had passed since Hershenow had turned the box over to Crawford, and there is nothing in the record to indicate that Hershenow had inquired about the box during that time or had done anything to assert control over it; and, most important, Hershenow had no right of control over the locus of the box.

{¶ 28} "The countervailing factors are that the box was sealed and had Hershenow's name on it." Id., 680 F.2d at 855.

{¶ 29} Weighing these factors, the First Circuit held that Hershenow had "no objective, justifiable expectation of privacy" in the box, and the postal inspector therefore did not conduct an unreasonable search of it. Id. at 856.

{¶ 30} Also instructive in this area of jurisprudence are the following three cases. In *State v. Freeman* (1980), 64 Ohio St.2d 291, 296, 18 O.O.3d 472,

414 N.E.2d 1044, we held that the accused, who had dropped his luggage while fleeing from police, could not "object to a search and seizure of property that he has voluntarily abandoned." We clarified that " '[t]he issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.' " Id. at 297, quoting *United States v. Colbert* (C.A.5, 1973), 474 F.2d 174, 176.

{¶ 31} Next, in *United States v. Chandler* (C.A.8, 1999), 197 F.3d 1198, after a St. Louis police supervisor informed Officer Reginald Chandler that he would be suspended without pay pending an investigation into drug trafficking, Chandler left his duty bag in the supervisor's office, and it was placed in a locked closet for eight months. Id. at 1199. Although Chandler had inquired about a pair of boots he purportedly had left in his locker during this period, he never inquired about his duty bag. Id. When police rediscovered it, they searched it without a warrant and found crack cocaine and heroin. Id. After a federal grand jury indicted Chandler on drug charges based on the results of that search, the district court denied his motion to suppress the evidence, finding that he had abandoned the duty bag, and a jury convicted him of unlawful distribution of crack cocaine and possession of both crack cocaine and heroin. See id. at 1199-1200.

{¶ 32} On appeal, the Eighth Circuit explained that "[a] warrantless search of abandoned property is constitutional because 'any expectation of privacy in the item searched is forfeited upon its abandonment.' " *Chandler* at 1200, quoting *United States v. Tugwell* (C.A.8, 1997), 125 F.3d 600, 602. The court upheld the district court's finding of abandonment, concluding that, from an objective viewpoint, Chandler had relinquished his expectation of privacy in the bag by leaving it in his supervisor's office and that his failure to reclaim or even

8

inquire about the bag in the following months constituted further evidence of its abandonment. Id. at 1200-1201.

{¶ 33} Lastly, in *United States v. Davis* (C.A.2, 2010), 624 F.3d 508, the evidence demonstrated that William Davis had left a safe with his estranged wife for an extended period of time and that the safe contained ammunition and a large quantity of pornographic images of children. His wife signed an affidavit stating that she had "kicked [Davis] out" of her apartment after learning that he had sexually abused her daughter and that he had returned to her apartment to retrieve his belongings but failed to remove the safe. Id. at 510-511. The police later obtained the safe from her home and searched it with her permission. She testified at the suppression hearing that Davis had never told her that he wanted the safe and that she had never prevented him from getting his property from her apartment. Id. at 511. Noting that " '[i]t is settled that a warrantless seizure of property that has been abandoned does not violate the Fourth Amendment,' " the court held that the district court had properly denied the motion to suppress the contents of the abandoned safe. Id. at 510-511, quoting *United States v. Springer* (C.A.2, 1991)*,* 946 F.2d 1012, 1017.

{¶ 34} As in *Hershenow*, *Freeman*, *Chandler*, and *Davis*, here the evidence similarly weighs against a finding that Gould had an objectively reasonable expectation of privacy in the hard drive. He left the hard drive in his apartment with his other belongings when he stole his brother's truck and left Toledo sometime in August 2006. From the time he left Toledo until his arrest by federal marshals sometime before June 3, 2007, Gould never inquired about the hard drive or attempted to assert control over it or its location, he concealed his whereabouts, and he never knew the hard drive had been removed from his apartment when his brother sold his other belongings.

{¶ 35} And even if we consider the period of time from when Gould left Toledo until Detective Dec searched the hard drive in December 2006, the facts

reveal that Gould had not made any inquiry about the hard drive or asserted control over it for almost four months. Hence, the police could have reasonably concluded that Gould had abandoned it.

**{¶ 36}** Thus, based on his conduct, Gould had no objectively reasonable expectation of privacy in the hard drive because when he relocated to Michigan he abandoned it by leaving it in his Toledo apartment without the ability to exert control over it. And as the courts concluded in *Chandler* and *Davis*, and as we held in *Freeman*, a warrantless search of abandoned property does not offend the Fourth Amendment.

**Conclusion**

**{¶ 37}** A person who abandons property has no objectively reasonable expectation of privacy in it. A warrantless search of abandoned property does not violate the Fourth Amendment because any expectation of privacy is forfeited upon abandonment. Accordingly, the judgment of the court of appeals ordering the exclusion of the evidence obtained from the hard drive is reversed, and Gould's convictions and sentence are reinstated.

Judgment reversed,<br>and convictions and sentence reinstated.

O'CONNOR, C.J., and LUNDBERG STRATTON, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

PFEIFER, J., concurs in judgment only.

_____

Julia R. Bates, Lucas County Prosecuting Attorney, and Evy M. Jarrett, Assistant Prosecuting Attorney, for appellant.

Timothy Young, Ohio Public Defender, and Jeremy J. Masters, Assistant Public Defender, for appellee.

Ron O'Brien, Franklin County Prosecuting Attorney, and Seth L. Gilbert, Assistant Prosecuting Attorney, urging reversal for Franklin County Prosecuting Attorney Ron O'Brien.

_____