[Cite as *State v. Eli*, 2017-Ohio-7667.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| MARTEZ ELI | : | Case No. 17-CA-1 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:            Appeal from the Court of Common
                                    Pleas, Case No. 15 CR 828




JUDGMENT:                           Affirmed




DATE OF JUDGMENT:                   September 15, 2017




APPEARANCES:

For Plaintiff-Appellee              For Defendant-Appellant

PAULA SAWYERS                       STEPHEN T. WOLFE
20 South Second Street,             1350 West 5th Avenue
Newark, OH  43055                   Suite 124
                                    Columbus, OH  43212

*Wise, Earle, J.*

{¶1}    Defendant-Appellant, Martez Eli appeals the October 25, 2016 judgment entry denying his motion to suppress and the December 13, 2016 judgment of conviction and sentence of the Court of Common Pleas of Licking County, Ohio. Plaintiff-Appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶2}    On October 15, 2015, Officer Lisa Walls of the Adult Parole Authority, went to 75 Allen Street in Newark to attempt a field contact with Eric Osler, a parolee under her supervision. She was accompanied by Parole Officers Greer and Wells. Walls had information indicating Osler was in possession of a firearm and was dealing drugs. As a person under the supervision of the Adult Parole Authority, Osler is subject to warrantless searches of his person, home, and vehicle pursuant to R.C. 2951.02 and/or R.C. 2967.131. He further was to have no contact with his son, defendant-appellant Martez Eli. Osler signed conditions of supervision outlining his understanding of these conditions.

{¶3}    On arrival at Osler's residence, the officers were admitted by the homeowner, Tisha Aldridge. They found Osler in his bedroom, lying in bed. The officers placed Osler in custody, cleared the living room and had Osler sit on the sofa. Asked where the firearm was, Osler initially denied he had one. He further denied there was anyone in the house besides himself, Aldridge and her 17-year-old son. He later admitted two of his sons, including Eli, were upstairs with one of their girlfriends.

{¶4}    Officers had the three come downstairs and sit in the living room. They were not handcuffed, nor were they under arrest. The officers were familiar with Eli and his

brother and aware that they are known to possess firearms. Officers therefore wanted to keep the men visible during the search for officer safety.

{¶5} Osler finally admitted he possessed a firearm and that it was in the bed where officers had found him. Officers seized the fully loaded weapon. Additional searching of Osler's room yielded methamphetamine, ammunition of different calibers, burner phones and drug paraphernalia. The officers requested assistance from the Central Ohio Drug Enforcement Task Force (CODE), as is their procedure when they find drugs or firearms.

{¶6} Detective Kyle Boerstler of the Licking County Sherriff's Office and assigned to CODE, arrived at the scene. He was assisted by Officer Fumi and Detective Kimble of the Newark Police Department who were also called to the scene. Aldridge gave Boerstler consent to search her home. Before searching Boerstler asked those seated in the living room who lived in the home. Eli stated he lived there "from time to time." Boerstler thus asked is Eli had any belongings in the home, and Eli denied having any possessions in the home. Boerstler asked those in the living room to remain there during the search for officer safety.

{¶7} Officer Fumi began the search in an upstairs bedroom where he found a black backpack. Inside the backpack was a baggy containing 254 oxycodone pills, a second baggy containing heroin, and some marijuana. He alerted Boerstler, who took the backpack and its contents downstairs.

{¶8} Boerstler asked those gathered in the living room who owned the backpack. Eli stated it belonged to him.

{¶9}   A more through search of the backpack produced a Greyhound Bus ticket with Eli listed as the passenger, and dated September 21, 2015, $94.00 in cash, a piece of mail addressed to Eli, a photo of Eli and his girlfriend, small jeweler bags commonly used to package drugs for sale, and a wallet containing Eli's expired driver's license. Eli was not arrested following the search and discovery of the drugs in his backpack.

{¶10}   On July 21, 2016, the Licking County Grand Jury returned an indictment charging Eli with one count of aggravated possession of oxycodone in an amount equal to or exceeding five times the bulk amount, but less than fifty times the bulk amount in violation of R.C. 2925.11(A)(C)(1)(c), a felony of the second degree, and possession of heroin in violation of R.C. 2925.11(A)(C)(6)(a), a felony of the fifth degree.

{¶11}   On August 26, 2016, Eli filed two motions to suppress. One to suppress his statements for lack of *Miranda* warnings, and a second to suppress the drugs discovered in the backpack. On October 11, 2016, a hearing was held on the matter. The trial court denied Eli's motions by judgment entry on October 25, 2016. The court found that Eli lacked standing to challenge the search of the backpack because he abandoned the backpack by denying ownership of anything in the home. The court found Eli could not therefore retain a reasonable expectation of privacy in the same.

{¶12}   The trial court further found that Eli was not in custody and thus *Miranda* warnings were not required. The court explained that while Eli was asked to remain in the living room during the search, he was not handcuffed and there was no evidence presented at the hearing to indicate Eli believed he was under arrest or detained in any manner. Finally, the trial court noted that after the search was concluded, Eli was free to leave and did so.

{¶13} The matter proceeded to a jury trial on December 12, 2016. The jury convicted Eli as charged. He was subsequently sentenced to a mandatory four years incarceration for aggravated possession of oxycodone and nine months incarceration for possession of heroin. Eli was ordered to serve the sentences concurrently.

{¶14} Eli filed an appeal and the matter is now before this court for review. Assignments of error are as follows:

I

{¶15} "THE TRIAL COURT ERRED IN FINDING THAT THE WARRANTLESS SEARCH OF THE BACKPACK BY LAW ENFORCEMENT OFFICERS WAS JUSTIFIED BECAUSE APPELLANT HAD VOLUNTARILY ABANDONED IT."

II

{¶16} "THE TRIAL COURT ERRED IN FINDING THAT THE UNCOUNSELED STATEMENTS OF APPELLANT WERE ADMISSIBLE BECAUSE HE WAS NOT DETAINED."

III

{¶17} "THE JURY'S VERDICTS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

IV

{¶18} "THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUPPORT THE CONVICTIONS."

V

{¶19} "THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO CRIM. R. 29."

I, II

{¶20} We will address appellant's first and second assignments of error simultaneously as both concern his detention and the search of property belonging to him. In his first assignment of error, Eli contends the trial court incorrectly interpreted the facts when it found he had abandoned the backpack and thus forfeited any reasonable expectation of privacy. In his second assignment of error, Eli argues the trial court erred when it determined he was not in custody for purposes of *Miranda*.

STANDARD OF REVIEW

{¶21} As recently stated by the Supreme Court of Ohio in *State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 12:

"Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. In ruling on a motion to suppress, "the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). On appeal, we "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accepting those facts as true, we must then "independently determine as a matter of law, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

{¶22}  As the United States Supreme Court held in *Ornelas v. U.S.*, 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 94 (1996), "…as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."

CUSTODY PURSUANT TO A VALID SEARCH AND *MIRANDA*

{¶23}  Eli argues that because he was not permitted to leave the house during the search, he was detained and therefore entitled to *Miranda* warnings. We disagree.

{¶24}  First, *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) provided:

The prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.

{¶25}  But "police are not required to administer *Miranda* warnings to everyone whom they question." *State v. Biros*, 78 Ohio St.3d 426, 440, 678 N.E.2d 891 (1997), citing *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714, 719 (1977). This is true when an individual is not in police custody, or is merely temporarily restrained.

{¶26}  The temporary restraint of a person, such as that required of those present in a home during the execution of a search warrant, does not invoke the "full panoply of

Fourth Amendment protections * * * for no actual arrest has occurred." *State v. Schultz*, 23 Ohio App.3d 130, 135, 491 N.E.2d 735 (1985), citing *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Temporary restraint of occupants during the search of a home is justified by "substantial law enforcement interests" such as officer safety, occupant safety and the orderly execution of the search, so as long as police have an articulable basis for suspecting criminal activity. *State v. Jester*, 12th Dist. Butler No. CA2010-10-264, 2012-Ohio-544 ¶ 18 citing *Michigan v. Summers*, 452, U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981).

{¶27} The instant matter is factually similar to *State v. Schultz* 23 Ohio App.3d 130, 491 N.E.2d 735 (1985). In *Schultz*, defendant Schultz was an overnight guest in a home that was searched for drugs pursuant to a warrant. Schultz was detained in the home during the search. At some point, officers asked Schultz whether a coat belonged to him, and Schultz replied that it did. Schultz was arrested after cocaine was found in the coat.

{¶28} On appeal, the Tenth District Court of Appeals held that police were not required to administer *Miranda* warnings before they asked Schultz about the coat, because he was only in an intermediate level of detention similar to an on-the-scene investigation in a *Terry* stop. *Schultz* at 135, 491 N.E.2d 735, citing *Terry v. Ohio*, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968). The court held Schultz's detention amounted to general on-scene questioning, like that described in *Miranda* as "a legitimate and necessary part of the fact-finding process undertaken by the police at the scene of the criminal activity." *Schultz* at 135-136. The detention incident to the search was thus not so custodial in nature as to require *Miranda* warnings. *Id*.

{¶29} Likewise here, we find Eli's detention while the officers executed the search was reasonable. Officer Walls was familiar with Eli, his brother, and Osler, and was aware that all three are known to possess firearms and thus presented officer safety concerns. Supp. Hrg. at 14-15. Further, Eli was not in custody and therefore *Miranda* warnings were not required. He was not handcuffed, nor told was he under arrest. Eli was in fact released after officers completed the search of the home. Supp. Hrg. at 38.

BACKPACK SEARCH

{¶30} As for the search of the backpack, the Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Here, the initial search of Osler, his bedroom, and common areas was pursuant to Osler's status as a parolee, and the Adult Parole Authority's statutory power to search the home of a parolee without a warrant. Responding assisting law enforcement officers received the consent of the homeowner to search the entire residence. Eli does not dispute the validity of the consent to search. When an individual voluntarily consents to a search, no Fourth Amendment violation occurs. *State v. Carothers*, 5th Dist. Tuscarawas No. 2015 AP 04 0017, 2015-Ohio-4569 ¶ 25, citing *United States v. Drayton*, 536 U.S. 194, 207, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002).

{¶31} Additionally, abandoned property is an exception to the warrant requirement. Before the search began, Eli stated he had no belongings in the home. Eli thereby abandoned the backpack. "A person who abandons property has no objectively reasonable expectation of privacy in it. A warrantless search of abandoned property does not violate the Fourth Amendment because any expectation of privacy is forfeited upon

abandonment." *State v. Gould*, 131 Ohio St. 3d, 179, 2012-Ohio-71, 963 N.E.2d 136 ¶ 37.

{¶32} Accordingly, we overrule the first and second assignments of error

### III, IV, V

{¶33} Eli's final three assignments of error will be addressed together as all can be resolved by examining the evidence presented at trial.

{¶34} In his third and fourth assignments of error, Eli argues the evidence presented by the state was insufficient to support his convictions and his convictions are against the manifest weight of the evidence. In his fifth assignment of error, Eli argues the trial court erred when it denied his Crim.R. 29 motion for acquittal. We disagree.

{¶35} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The granting of a new trial "should be exercised only

in the exceptional case in which the evidence weighs heavily against the conviction."

*Martin* at 175.

{¶36} Crim.R. 29 governs a motion for acquittal. Subsection (A) states the following:

> The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

{¶37} The standard to be employed by a trial court in determining a Crim.R. 29 motion is set out in *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), syllabus: "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."

## THE CHARGES

{¶38} Eli was charged with aggravated possession of oxycodone in an amount equal to or exceeding five times the bulk amount, but less than fifty times the bulk amount in violation of R.C. 2925.11(A)(C)(1)(c). To prove the charge the state was required to produce evidence to show that Eli knowingly obtained, possessed, or used oxycodone in

an amount equal to or exceeding five times the bulk amount, but less than fifty times the bulk amount.

{¶39} Eli was further charged with possession of heroin in violation of 2925.11(A)(C)(6)(a). To prove this charge, the state was required to produce evidence to show Eli knowingly obtained, possessed, or used heroin.

{¶40} We note that Ohio law recognizes the concept of "constructive possession" of illegal drugs. *State v. Brunner*, 5th Dist. Stark No. 2016CA00134, 2017-Ohio-2618 ¶ 18 citing *In re D.P.*, 9th Dist. Summit No. 24591, 2009-Ohio-4335, ¶ 7, and *State v. Wolery* (1976), 46 Ohio St.2d 316, 329, 348 N.E.2d 351 (1976). The jury in this matter was provided with a constructive possession instruction. T. at 140.

THE EVIDENCE

{¶41} At trial, the state presented evidence from Officer Fumi and Detective Boerstler outlining the search of the residence, and the discovery of the backpack. After first denying he had any possessions in the home, Eli claimed ownership of the backpack after it was discovered by officers. The backpack contained the drugs as well as items personal to Eli – his expired Ohio driver's license, a bus ticket showing Eli as the passenger and dated one month earlier, a piece of mail addressed to Eli, and a photo of Eli and his girlfriend. T. at 92-94.

{¶42} Before resting its case, the state read the jury stipulations agreed upon by Eli and the state. Eli stipulated that the 254 pills found in the backpack were properly tested and found to be oxycodone, and that the bulk amount of oxycodone is 15 pills. Eli further stipulated that the white powder found in the backpack was properly tested and found to be heroin. Eli rested without presenting any evidence.

{¶43}  Eli claimed ownership of the backpack. However, even if he had denied ownership, the state could still rely on circumstantial evidence and constructive possession to prove its case. Circumstantial evidence is sufficient to prove the essential elements in a criminal case. *State v. Willey*, 5th Dist. Guernsey No. 98 CA 6, 1999 WL 3962 (Nov. 24, 1998) citing *State v. Hopfer*, 112 Ohio App.3d 521, 558, 679 N.E.2d 321 (1996). "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession. (*State v. Wolery*, 46 Ohio St.2d 316, 348 N.E.2d 351, explained and followed.) " *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus. The backpack was found in a room Eli had occupied moments before, and contained items indicating it belonged to Eli.

{¶44} Accordingly, we find the state presented ample evidence to survive a Crim.R. 29 motion, and to support Eli's convictions. We further find the evidence does not weigh heavily against Eli's conviction. The third, fourth, and fifth assignments of error are therefore overruled.

By Wise, Earle, J.

Gwin, P.J. and

Wise, John, J. concur.


EEW/sg 807