# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2009

_____

United States of America,     *
    *
        Plaintiff - Appellee,     *
    *      Appeal from the United States
        v.     *      District Court for the Western
    *      District of Missouri.
Edward Gallegos     *
    *         [PUBLISHED]
        Defendant - Appellant.     *

_____

Submitted: March 12, 2007
Filed: March 27, 2007

_____

Before MELLOY, SMITH, and BENTON Circuit Judges.

_____

PER CURIAM.

Edward Gallegos pleaded guilty to conspiracy to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), and 846. The district court[1] sentenced Gallegos to 168 months' imprisonment, which was at the bottom-end of the applicable advisory Guidelines range. Gallegos appeals his sentence as unreasonable, arguing that the district court abused its discretion when it

_____

[1]The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri.

sentenced Gallegos to a longer term of imprisonment than one of his co-defendants. We affirm.

I.    Background

The investigation leading to Gallegos's indictment in this case began when Eric Fujan was stopped on a highway in Dallas County, Missouri. A search of Fujan's vehicle revealed, among other things, three small plastic bags holding 961 grams of methamphetamine. Fujan was arrested and transported to the Dallas County Jail, where he agreed to cooperate with officers. Fujan claimed ownership of the drugs found in his vehicle and told officers that he had been distributing methamphetamine in the Springfield, Missouri area for the last eight months. He said the methamphetamine was usually transported to him once a month by two men from Dallas, Texas. Fujan identified one of the men as David Sonesourinhasack and the other simply as Edward. Edward was later identified as Edward Gallegos. On two occasions, Fujan had traveled to Dallas to retrieve methamphetamine from the two men. Fujan received one to one-and-a-half pounds of methamphetamine from Sonesourinhasack and Gallegos during each transaction. Fujan agreed that he had distributed approximately eleven-and-a-half pounds of methamphetamine in the Springfield area in the past eight months.

After Fujan was released from custody, he contacted DEA agents and reported that Sonesourinhasack was in town at the apartment of Daryl Schoenfeldt, packaging two pounds of methamphetamine. Fujan placed a recorded call to Schoenfeldt. Schoenfeldt told Fujan that he, Sonesourinhasack, and another man were looking for a buyer for one of the two pounds of methamphetamine. Based on this information, officers went to Schoenfeldt's apartment. Schoenfeldt consented to a search of the premises. After being arrested, Schoenfeldt stated that Sonesourinhasack and the other man had left the apartment in search of a buyer for the remaining pound of methamphetamine. Sonesourinhasack returned to the apartment after receiving a call

from Schoenfeldt, and was arrested carrying 433.7 grams of methamphetamine and $4,400 in cash.

While being interviewed, Sonesourinhasack admitted that he and Gallegos had brought five pounds of methamphetamine from Dallas, Texas, to Springfield, Missouri. He stated that Gallegos had recently received another seven pounds of methamphetamine that had been distributed in the Springfield area. Sonesourinhasack agreed to cooperate with the officers, and made a recorded telephone call to Gallegos. During the call, Gallegos made statements confirming his part in the conspiracy.

Sonesourinhasack then traveled with DEA agents to Dallas, Texas, to help in the investigation of Gallegos and Carlos Gonzalez. Sonesourinhasack identified the residences of Gallegos and Gonzalez. He also placed several recorded telephone calls and made contact with Gallegos and Gonzales. These conversations further evidenced the roles of Gallegos and Gonzales in the conspiracy. Several months later, Gallegos was arrested during a prearranged four-pound methamphetamine transaction with a confidential informant and a DEA agent.

Gallegos, Sonesourinhasack, Fujan, Schoenfeldt, Gonzales, and five others were charged with conspiracy to distribute methamphetamine. Gallegos and Sonesourinhasack both pleaded guilty to conspiracy to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. 841(a)(1), 841(b)(1)(A)(viii), and 846. Due to Sonesourinhasack's cooperation, the government filed motions under U.S.S.G. § 5K1.1 and § 3553(e) on his behalf, allowing the court to sentence him below the statutory mandatory minimum of 120 months in prison. After receiving credit for acceptance of responsibility, the district court found that Sonesourinhasack had an adjusted offense level of thirty-three and a criminal history category of II, resulting in an applicable advisory Guidelines range of 151-188 months' imprisonment. The court granted the government's motion for a downward departure based on substantial assistance, and sentenced Sonesourinhasack to seventy months' imprisonment.

At Gallegos's sentencing, the district court granted Gallegos a full three-level reduction for acceptance of responsibility. A total offense level of thirty-three, when combined with a criminal history category of III, resulted in an advisory Guidelines range of 168-210 months' imprisonment. Gallegos argued that a sentence of 168 months was unreasonable under 18 U.S.C. § 3553(a)(6) because Sonesourinhasack, who was equally culpable, had received a sentence of seventy months' imprisonment. This, according to Gallegos, created unwarranted sentencing disparity. The district court acknowledged that it was "mindful" of the sentences received by Gallegos's co-defendants. Gallegos admitted that he could not benefit from a motion for downward departure pursuant to § 5K1.1, as could Sonesourinhasack. Finding no factors to warrant a variance from the advisory Guidelines range, the court sentenced Gallegos to 168 months in prison.

II.    Analysis

Gallegos brings this same argument on appeal, contending that a sentencing disparity of ninety-eight months for equally culpable co-defendants is unreasonable even in light of Sonesourinhasack's cooperation with the government. Other than the cooperation, Gallegos argues, he and Sonesourinhasack are similarly situated. Gallegos cites the facts that Sonesourinhasack told DEA agents that both he and Gallegos delivered methamphetamine to Fujan in Springfield, Missouri, and argues that roughly the same drug quantity could be attributed to both Gallegos and Sonesourinhasack.

We review the district court's sentence for reasonableness, which is a standard akin to abuse of discretion. United States v. Vasquez, 433 F.3d 666, 670 (8th Cir. 2006). "Sentences within the guidelines are 'presumptively reasonable.'" Id. at 670-71 (quoting United States v. Lincoln, 413 F.3d 716, 717 (8th Cir. 2005)). However, a sentence within the advisory Guidelines range can be unreasonable if the court "(1) fails to consider a relevant factor that should have received significant weight; (2)

gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment." Id. at 671 (citing United States v. Haack, 403 F.3d 997, 1004 (8th Cir. 2005)).

Gallegos argues that the district court abused its discretion by failing to consider the relevant factor of unwarranted sentencing disparities. See 18 U.S.C. § 3553(a)(6). While the district court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), "Congress clearly thought it appropriate that defendants who provide substantial assistance should receive lower sentences than would otherwise be imposed." United States v. Jimenez-Gutierrez, 425 F.3d 1123, 1127 (8th Cir. 2005) (Colloton, J., concurring). Disparity in sentences between a defendant who provided substantial assistance and one who provided no assistance, therefore, is not "unwarranted." See Vasquez, 433 F.3d at 671 (finding that any disparity between a defendant's sentence and his co-defendant's sentence was warranted where, among other things, the defendant had a greater criminal history than his co-defendant); United States v. Goody, 442 F.3d 1132, 1134 (8th Cir. 2006) (holding that there was no "unwarranted disparity" where there were "a number of relevant differences between" defendants, including the fact that one benefitted from the government's motion to reduce his sentence based on substantial assistance under § 5K1.1).

Thus, even if we assume that Gallegos and Sonesourinhasack are equally culpable in this conspiracy, they are not similarly situated and disparity between their sentences is not unwarranted. First, Sonesourinhasack was in a lower criminal history category, which resulted in a lower applicable advisory Guidelines range than Gallegos despite being charged with the same criminal conduct. Second, and most importantly, Sonesourinhasack received motions for a downward departure based on substantial assistance. Immediately upon his arrest, Sonesourinhasack named Gallegos as one of the co-conspirators and agreed to cooperate with law enforcement

officers. Sonesourinhasack placed a number of recorded calls to Gallegos from custody, which made it clear that Gallegos was involved. Sonesourinhasack then traveled to Dallas, Texas, with DEA agents to help with surveillance of both Gallegos and co-defendant Gonzales. Sonesourinhasack led the agents to the residences of Gallegos and Gonzales, placed several recorded telephone calls, and made contact with both men.

After hearing the extent of Sonesourinhasack's assistance in obtaining the indictment in this case, the district court determined that a sentence of seventy months' imprisonment was proper. Gallegos, on the other hand, stated at sentencing that he knew he could not receive a § 5K1.1 motion based on substantial assistance, therefore admitting that he and Sonesourinhasack were not similarly situated. Acknowledging that Gallegos could not benefit from a downward departure as Sonesourinhasack did, and stating that it was "mindful" of the length of Gallegos's co-defendant's sentences, the district court sentenced Gallegos to a term at the low-end of his advisory Guidelines range. After reviewing the record, we hold that the district court's sentence of 168 months in prison is not an abuse of discretion.

Further, even if Gallegos's within-Guidelines sentence was not presumed to be reasonable under our precedents, we would still find that the district court acted reasonably in imposing a sentence of 168 months in prison.

The judgment of the district court is affirmed.

_____