# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-40399
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

November 29, 2016

Lyle W. Cayce
Clerk

DOCTOR GLEN W. HURLSTON,

> Plaintiff - Appellant

v.

CITY OF PRINCETON, TEXAS; JEFFERY BARNETT; ROBERT MITCHNIK; CITY OF KYLE, TEXAS,

> Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:13-CV-757

Before BENAVIDES, PRADO, and COSTA, Circuit Judges.

PER CURIAM:*

This is an appeal from the grant of summary judgment in favor of the Appellees, the City of Princeton, Texas, the City of Kyle, Texas, Kyle Police Chief Jeffery Barnett ("Barnett"), and Princeton Police Officer Robert Mitchnik ("Mitchnik"). Appellant Doctor Glen W. Hurlston ("Hurlston") brought this 42 U.S.C. § 1983 suit against the Appellees, alleging that Barnett and Mitchnik

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-40399

conspired to violate his federal constitutional rights, that there was a pattern or practice of harassment against him, and that the cities failed to train or supervise their officers. Finding no reversible error, we AFFIRM the district court's grant of summary judgment in favor of the Appellees.

## I.     BACKGROUND

The evidence demonstrates that Hurlston and Suzanne Besse began dating in early 2006. Later that year, Besse began a physical relationship with Barnett. At that time, Barnett was the Chief of the Princeton Police Department. In 2007, Hurlston and Besse ("Ms. Hurlston") were married and had a residence in Princeton, Texas. In March of 2011, Ms. Hurlston gave birth to Barnett's son while she was still married to Hurlston. In May of 2011, Barnett moved from Princeton, Texas, to Kyle, Texas, and became the Kyle Chief of Police.

On January 1, 2012, Ms. Hurlston called the Princeton Police Department, claiming that Hurlston had choked her. Officers Joe Pell and Wayne Clark responded to the domestic disturbance call at the Hurlston's residence and observed marks on Ms. Hurlston's neck. The officers arrested Hurlston, and he was charged with Assault Family Violence. The next day, a magistrate issued an emergency protection order, which prohibited Hurlston from communicating with Ms. Hurlston for 61 days. On January 29, Ms. Hurlston contacted the police, complaining that Hurlston had violated the protective order by calling her 20 times and sending texts approximately 50 times.

With respect to the alleged choking incident, a Collin County grand jury indicted Hurlston with the third degree felony offense of Assault Family Violence on March 6, 2012. On April 26, Officer Pannell executed a probable cause affidavit stating that on January 29, Hurlston had violated the terms of a court protective order by contacting Ms. Hurlston. On May 16, the Collin

No. 16-40399

County District Attorney filed an Information charging that Hurlston had violated the terms of a protective order by contacting Ms. Hurlston in a threatening and harassing manner. On June 1, the Collin County Clerk issued a warrant for Hurlston's arrest in connection with the charge of violating the court's protective order.

After Hurlston learned there was a warrant for his arrest, he surrendered to the Collin County authorities on June 19, and made bond. On January 22, 2013, Hurlston pleaded no contest to the lesser included misdemeanor offense of Assault. The plea agreement provided for 2 years of deferred community supervision, a $500 fine and 40 hours of community service. In addition, the charge of violating the court's protective order was dismissed.

Meanwhile, in August of 2012, on two occasions, an emergency 9-1-1 call was made from the Hurlston residence. Both times Princeton police officers responded to the domestic disturbance call, and the officers were able to diffuse the situation without making an arrest. Mitchnik was one of the police officers who responded to both calls.

Hurlston brought suit against Barnett, Mitchnik, the City of Kyle, and the City of Princeton, alleging constitutional violations pursuant to 42 U.S.C. § 1983. Hurlston claimed that the defendants violated his First Amendment right of free speech, his Fourth and Fifth Amendment right to life and liberty, and his Fourteenth Amendment right to equal protection under the law. Counsel for Barnett and Mitchnik filed a motion for summary judgment and counsel for the cities of Princeton and Kyle filed a separate motion for summary judgment. In two reports, the magistrate judge recommended that the motions be granted. Hurlston filed objections to the report and recommendation issued with respect to Barnett and Mitchnik's motion for summary judgment. The district court adopted the magistrate's recommendation to grant the motions

No. 16-40399

for summary judgment and entered final judgment against Hurlston. Hurlston now appeals.

II.    ANALYSIS

A.  Standard of Review

This Court reviews a district court's ruling on a motion for summary judgment *de novo*, "viewing all evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007). The moving party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

B.  Challenge to Exclusion of Evidence

Hurlston contends that the district court "expressly disregarded" evidence that created a genuine issue of material fact with respect to the alleged conspiracy that existed between Barnett, Mitchnik and other officers in the Princeton and Kyle police departments. In the report and recommendation, the magistrate judge noted that the defendants had objected to "certain deposition testimony of Plaintiff, the deposition testimony of Chad Wilhelm, and the affidavit of Gabriel Brow as hearsay evidence." The magistrate judge ruled that the defendants' objections were "denied as moot because the Court did not rely upon the objected-to-evidence in making its decision on the Summary Judgment Motion." As such, the magistrate judge treated the evidence as inadmissible. Hurlston objected to the magistrate judge's failure to consider this evidence, and the district court reviewed the objection *de novo*.

The district court sustained the defendants' objection to the affidavit of Gabriel Brow, ruling that it constituted hearsay. However, the district court overruled the defendants' objections to the other evidence and considered that

4

No. 16-40399

evidence in determining that there was no genuine issue of material fact with respect to Hurlston's constitutional claims.  Accordingly, the only evidence that the district court found inadmissible is the affidavit of Gabriel Brow.

Hurlston contends that the district court erred in excluding the affidavit of Gabriel Brow because it does not constitute hearsay.  We review the district court's evidentiary rulings for abuse of discretion.  *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 667 (5th Cir. 1999).  In the affidavit, Gabriel Brow states that in 2013, Ms. Hurlston told him "that she conspired with Jeffery Barnett in 2011 and 2012 so that Jeffery Barnett would use his influence as the former police chief of the City of Princeton, Texas and the (then) current police chief of the City of Kyle, Texas to have Glen Hurlston charged with a felony and thrown into prison so that [she] and Jeffery would be able to take Glen's money."

Hurlston argues that the affidavit is not hearsay because it is an admission offered against an opposing party within the meaning of Rule 801(d)(2) of the Federal Rules of Evidence.   Rule 801(d)(2) does provide that when an opposing party's statement is offered against that party, it is not hearsay if certain conditions are met.  However, Ms. Hurlston is not a party to this lawsuit and thus, the statements attributed to her in the affidavit are by definition not an admission by a party opponent.  *Cf. United States v. Anderton*, 679 F.2d 1199, 1202–03 (5th Cir. 1982) (explaining that Rule 801(d)(2) "applies only to the admission of a statement against a *party*") (emphasis added). Hurlston has not shown that the district court abused its discretion in excluding the affidavit.[1]

---

[1] Rule 801(d)(2)(E) also provides that a statement "made by the party's coconspirator during and in furtherance of the conspiracy" does not constitute hearsay.  Assuming *arguendo* for the purpose of this issue that Ms. Hurlston was a coconspirator with a party to this suit, the affidavit explicitly states that her admissions to Brow were made in 2013 and that she had previously conspired with Barnett in 2011 and 2012.  Therefore, the statements

No. 16-40399

C. Qualified Immunity

Hurlston contends that the district court erred in granting Barnett and Mitchnik summary judgment based on the defense of qualified immunity. "To determine whether a defendant is entitled to qualified immunity, this Court engages in a two-pronged analysis, inquiring (1) whether the plaintiff has alleged a violation of a constitutional right and, if so, (2) whether the defendant's behavior was objectively reasonable under clearly established law at the time the conduct occurred." *Hampton v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007) (citing *Easter v. Powell*, 467 F.3d 459, 462 (5th Cir. 2006)). "If the plaintiff fails to state a constitutional claim or if the defendant's conduct was objectively reasonable under clearly established law, then the government official is entitled to qualified immunity." *Id.* (citing *Easter*, 467 F.3d at 462). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments," and "protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 732, 743 (2011) (internal quotation marks and citation omitted). "Once a defendant invokes qualified immunity, the burden shifts to the plaintiff to show that the defense is not available." *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010).

1. Barnett

Hurlston contends that Barnett used the position as Police Chief to harass him and have him arrested. However, the evidence does not raise a genuine issue of material fact with respect to Barnett's using his state authority to have Hurlston harassed and arrested.

---

were not made "during and in furtherance of the conspiracy;" but instead were made after the alleged conspiracy. Rule 801(d)(2)(E) does not apply to the affidavit.

No. 16-40399

### a. Arrest for Violating Protective Court Order

Hurlston's affidavit states that during the "last week of May 2012, I called Barnett at work and told his secretary that I am coming to the next Kyle city council meeting on June 5, 2012 to expose him (Barnett) to the council." Hurlston contends that after he called Barnett, "Barnett scrambled to have a warrant issued" for his arrest before the council meeting to be held on June 5. To support this contention, Hurlston states that "no action was taken on Ms. Hurlston's complaint until" he made the phone call to Barnett. Hurlston is mistaken.

After Ms. Hurlston made her complaint that Hurlston had violated the court protective order, and prior to Hurlston's call to Barnett, law enforcement officials did take action. As set forth previously, on April 26, Officer Pannell executed a probable cause affidavit stating that on January 29, Hurlston had violated the terms of a court protective order by contacting Ms. Hurlston.[2] On May 16, the Collin County District Attorney filed an Information charging that Hurlston had violated the terms of a protective order by contacting Ms. Hurlston in a threatening and harassing manner. Thus, contrary to Hurlston's contention, the case against him was moving through the system prior to his call to Barnett. Hurlston points to no evidence that raises a fact issue with respect to whether Barnett used his position with the Kyle Police Department to have the Collin County District Attorney issue an arrest warrant for his violating the protective order.[3]

---

[2] Hurlston refers to the protection order as "long-expired." While the protection order was valid for only 61 days, Ms. Hurlston's complaint that he violated it was made within the 61-day period.

[3] Moreover, the sequence of events does not support Hurlston's contention that Barnett had a warrant issued in order to have him arrested *before* the Kyle City Council meeting. The Collin County arrest warrant was issued on June 1, and the Kyle City Council meeting was scheduled for June 5. Barnett did not surrender to the Collin County Sheriff's Department until June 19, which was after the scheduled meeting.

No. 16-40399

### b. Investigate Report Ordered

Hurlston further contends that "at Barnett's behest, on May 30, 2012, the Texas Department of Public Safety, Intelligence and Counterterrorism Division, produced a 'Threat to a Peace Officer Investigation' report on Hurlston." The report was admitted in the record, and it provides that the name of the person who requested the report is Texas Ranger Jimmy Schroeder. Although Hurlston speculates that Barnett requested the report, he points to no evidence that Barnett did so.

### c. Hurlston's Testimony

Hurlston also points to his deposition testimony that Ms. Hurlston had admitted to him that she and Barnett were involved in a "setup" to have him arrested and take his money. Of course, Hurlston's testimony with respect to Ms. Hurlston's statements to him constitute hearsay and thus do not constitute competent summary judgment evidence. *See Warfield v. Byron*, 436 F.3d 551, 559 (5th Cir. 2006) (explaining that hearsay is inadmissible for summary judgment purposes under Federal Rule of Civil Procedure 56). Thus, like Brow's affidavit, this evidence is hearsay and may not be considered because it is not competent summary judgment evidence.

### d. Assault Incident

Hurlston contends that Barnett conspired with Mitchnik and others to have him arrested for the assault/choking incident on January 1, 2012, in Princeton. However, neither Barnett nor Mitchnik were present at that arrest. Indeed, Barnett was the Chief of the Kyle Police Department when the Princeton Police Officers arrested Hurlston after Ms. Hurlston called 9-1-1, stating that Hurlston had choked her.

Hurlston points to the emails between Barnett and Ms. Hurlston as evidence of a conspiracy against him. In an email sent the day after the choking incident, Ms. Hurlston tells Barnett that she called the police when

No. 16-40399

Hurlston attacked her.  In her email to Barnett, Ms. Hurlston stated that she thought she should tell Barnett because "you got mad the last time I called the cops on [Hurlston] and didn't tell you."  This private email between Barnett and Ms. Hurlston indicates that Barnett had no prior knowledge of any plan to call the police and have Hurlston arrested.

Hurlston also points to the email conversation in which Barnett is offering her some advice about making sure her phone does not have anything "negative" on it such as "phone numbers, pictures, messages, skype info email account info" before the attorneys become involved.   Barnett is apparently advising her to get rid of any evidence of their affair prior to the commencement of her divorce proceedings.  However, a police officer's private acts that are not advanced by his state authority, are not acts under color of state law.  *Cf. Delcambre v. Delcambre*, 635 F.2d 407, 408 (5th Cir. 1981) (holding that a police chief was not acting under color of state law despite the fact that he was at work at the police station when he assaulted his sister-in-law over personal arguments about family issues).  Although Barnett advised Ms. Hurlston about covering up evidence of their affair, this was a private act, and the evidence does not show that it was connected to his authority as the Kyle Police Chief.

Hurlston also points to emails that discuss the Hurlstons' bank account. Ms. Hurlston stated that she was going to try to obtain as much cash from the account as she could.  Barnett's only reference to money is when he asks about her attorney for the divorce proceedings.  Barnett asked if she was going to employ the same attorney as the one she used in the child custody proceedings and then stated that he thought the attorney "will say either take half of the cash . . . or keep receipts to show it was used for child care . . . spousal support . . . during this time . . . not fun and partying as his attorney will likely say." (ellipses in original).  Here, Barnett is stating what he thinks her divorce

9

attorney will advise her to do with respect to the money in the bank account. Again, there is no indication that Barnett is acting in his capacity as a state officer.

In sum, by the time of Hurlston's arrests, Barnett had moved from Princeton to Kyle, and was not present at either arrest. Although it is undisputed that Barnett had an affair with Hurlston's wife and such evidence provides a motive to harm Hurlston, Hurlston relies on speculation and innuendo but no competent summary judgment evidence that creates a material fact issue suggesting that Barnett used his job to harass Hurlston.

### 2. Mitchnik

Hurlston also contends that the district court erred in granting summary judgment in favor of Mitchnik. Hurlston argues that "[t]here are genuine disputes as to material facts about whether Mitchnik engaged in a conspiracy with Barnett to harass and persecute" him.

Hurlston points to two occasions in August of 2013 when Princeton Police Officers responded to 9-1-1 emergency calls made from the Hurlston residence. On one occasion, Hurlston was the one who called the police, and on the other occasion, Ms. Hurlston made the emergency call. Mitchnik was one of several officers that responded on both of those occasions. No one was arrested during either incident.

Hurlston complains that during one of these incidents Mitchnik said "I can arrest you for illegally recording this conversation." Hurlston also complains that Mitchnik partially blocked Hurlston's access to his home and daughter during one of these incidents. Because we review the record in the light most favorable to the non-movant, we assume that Hurlston's factual allegations are true. However, "[t]o establish a cause of action based on conspiracy a plaintiff must show that the defendants agreed to commit an illegal act." *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982). As set

forth above, there is no evidence creating a fact issue with respect to Barnett using his office to harass Hurlston. Black's Law Dictionary defines "conspiracy" as "[a]n agreement by two or more persons to commit an unlawful act, coupled with an intent to achieve the agreement's objective, and (in most states) action or conduct that furthers the agreement; a combination for an unlawful purpose." Conspiracy, Black's Law Dictionary (10th ed. 2014). Hurlston's claim of conspiracy fails because there is no evidence that Barnett conspired with Mitchnik. Mitchnik cannot conspire with himself. Accordingly, because no fact-finder could reasonably infer from this record that Barnett and Mitchnik conspired to violate Hurlston's constitutional rights, the district court properly granted summary judgment in favor of Mitchnik.

D. City of Princeton and City of Kyle

As set forth above, Hurlston has not raised a fact issue with respect to the claim that Barnett and Mitchnik conspired to violate Hurlston's constitutional rights. Hurlston therefore cannot maintain a section 1983 claim against the cities. *See, e.g.*, *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 467 (5th Cir. 2010) (explaining that a municipality cannot be held liable under section 1983 if no constitutional violation has been committed by a municipal actor).[4]

III.   CONCLUSION

For the foregoing reasons, the district court's judgment is AFFIRMED.

---

[4] Hurlston contends that the magistrate judge should not have referred to his plea of nolo contendere (no contest) to the misdemeanor assault charge because it is inadmissible under Federal Rule of Evidence 410. Although the magistrate judge did refer to Hurlston's no contest plea in the background section of the report and recommendation, Hurlston did not make this objection to the district court. In any event, we need not tarry here any longer. Assuming *arguendo* that evidence of the plea was inadmissible, we have reviewed the summary judgment record *de novo* and find no error, plain or otherwise, in the district court's grant of summary judgment based on the admissible evidence in the record.

11